McFadin *v.* David.

No. 8780.

McFADIN *v.* DAVID.

SLANDER.—*Actionable Words.*—*Pleading.*—In an action of slander by D. against E., it was averred that A. died testate, bequeathing to B. and C., daughters of D., $500 each, leaving E., his son, surviving him, and that E. spoke of and concerning D., and of and concerning his father's death, the following false and scandalous words: "Old lady, you gave my father four double doses of morphine on the day he made his will; you said, old man, you had better be fixing up your business; if it hadn't been for you giving morphine, your daughters would not have gotten what they did."

*Held,* that the words, with the proper innuendoes, are not actionable *per se.*

*Held,* also, that the extrinsic circumstances averred in the complaint do not render the words actionable.

VERDICT.—*Defects not Cured.*—*Complaint.*—*Demurrer.*—A verdict will not aid defective averments in a complaint, where its sufficiency is questioned by a demurrer.

From the Posey Circuit Court.

*E. M. Spencer* and *W. Loudon,* for appellant.

*A. P. Hovey* and *G. V. Menzies,* for appellee.

BEST, C.—This was an action of slander, and the only question in the record arises upon the action of the court in overruling a demurrer to the second paragraph of the complaint.

In this paragraph it was alleged, " that heretofore, to wit, on the 17th day of July, 1879, one Noah McFadin, the father of the said defendant, was in his last sickness and in a dying condition, and then and there made and executed his last will and testament, in which said last will and testament the said Noah McFadin bequeathed to the daughters of the plaintiff, Maggie David and Nancy David, the sum of $500 each, and after the making of said will the said Noah McFadin departed this life testate, leaving said will in full force; and afterwards, to wit, on the 1st day of September, 1879, the said defendant spoke the following false and scandalous words of and concerning the said plaintiff, and of and concerning the said Noah McFadin, and the said last will and testament, that is to say : ' Old Lady ' (the plaintiff meaning), ' you gave my father ' (the said Noah McFadin meaning) ' four double doses of morphine on the day he made his will ; you ' (meaning the plaintiff) ' said, old man, you ' (said Noah McFadin meaning) ' had better be fixing up your business.   If it hadn't been for you ' (the plaintiff meaning) ' giving morphine, your daughters ' (the said Maggie and Nancy meaning) ' would not have gotten what they did.'  Then and thereby meaning that the said plaintiff had unlawfully administered poison to the said Noah McFadin in his lifetime, which caused his death, and left to the said daughters of the plaintiff $500 each, for which plaintiff says she is damaged in the sum of $2,000, for which she demands judgment."

The paragraph was insufficient, and the demurrer should have been sustained.

The words spoken were not actionable *per se*.   They do not, in their usual sense, either import a charge of murder or of manslaughter.   They do not amount to a charge that death ensued from the administration of the morphine, or that it was administered either improperly or feloniously.   Indeed, it

McFadin v. David.

does not appear that any harm resulted from its administration. It is true that it is stated by the innuendo that the defendant meant, by the language spoken, that the plaintiff had caused the death of Noah McFadin by the unlawful adminis-tration of poison, but an innuendo can not enlarge the meaning of words. If the words themselves do not warrant the signification imputed to them, an innuendo can not. Words not actionable *per se* can not be rendered so by an innuendo.

"The absence of a *colloquium*, showing by extrinsic matter that the words charged are actionable, is not supplied by an *innuendo* attributing to those words a meaning which renders them actionable." *Schurick* v. *Kollman*, 50 Ind. 336.

Treating the paragraph in question as unaided by the averment of extrinsic facts, the *innuendo* can not supply a meaning that the words themselves do not warrant. Taken in their usual and ordinary sense, they do not charge that the plaintiff caused the death of Noah McFadin by the administration of morphine or otherwise, and as they do not they are not actionable *per se*. Unless they constitute such charge, they impute no crime to the plaintiff.

In *Ford* v. *Primrose*, 5 D. & R. 287, the language was: "I think the present business ought to have the most rigid inquiry, for he (meaning the plaintiff) murdered his first wife, that is, he administered, improperly, medicines to her for a certain complaint, which was the cause of her death."

Upon a motion in arrest of judgment, ABBOTT, C. J., said: "Admitting it to be doubtful whether these words import the charge of a crime upon the plaintiff, that doubt has been removed by the verdict; for the declaration alleges that the defendant uttered these words with an intention to cause it to be believed that the plaintiff was guilty of murder or manslaughter, and if the jury were of opinion that they were uttered with that intention we can not say that the plaintiff is not entitled to a verdict. But I can not say that these words may not, in reasonable construction, import a charge of murder or manslaughter, especially after the finding of the jury."

BAYLEY, J., said : " I take it that if a man, by the improper administration of medicines to another, cause his death, that would be manslaughter. And if he administers medicines with an intent to produce death, it would be murder. I think the words declared upon import, at least, a charge of manslaughter."

The language of these judges was addressed to words not only charging the plaintiff with causing the death of his wife, but causing it by the improper administration of medicines. In this case the words neither charge that the morphine was improperly administered or that its administration produced death.

In *Jones* v. *Diver*, 22 Ind. 184, the words were these : " In my opinion the bitters that Diver fixed for Smith were the cause of his death," and it was averred that the words were used in a criminal sense, intending to charge Diver with the murder of Smith, which was understood by the hearers.

The court said : " The words do not, in their usual sense, import a charge of murder ; and there is no colloquium showing that they were used in a conversation about Smith as having been murdered, etc., so as to give the words a particular signification as used in the given case."

A charge that one person caused the death of another is not actionable *per se*. *Miller* v. *Buckdon*, 2 Bulst. 10 ; *Peake* v. *Oldham*, 1 Cowper, 275.

In the light of these authorities we think it clear that the language declared upon is not actionable *per se*.

The pleader did not, we think, regard the words actionable *per se*, as he alleged extrinsic circumstances to show their actionable quality ; and the question arises whether such facts render them slanderous. We do not think they do. The only facts averred are the amount of the legacies, the time when and the condition of the testator at the time he made his will. These add nothing to the complaint, as they do not show that the words were not used in their usual and ordinary sense, and therefore they do not render the words actionable.

The appellee, however, insists that the court, after verdict, will consider the words as used in their worst sense. This is the rule upon a motion for a new trial. *Blickenstaff* v. *Perrin*, 27 Ind. 527. And on a motion in arrest of judgment, or an assignment of error that the complaint does not state facts, many defective averments will be aided by a verdict, but not when the complaint is questioned by a demurrer. In such case a verdict can not aid a defective averment, nor supply a good cause of action.

Where the language is susceptible of an innocent and a criminal meaning, the court, after verdict for the plaintiff upon a motion for a new trial, in arrest, or upon an assignment of error, will adopt the latter meaning, and where the language is rendered actionable by extrinsic circumstances defectively averred, the verdict will aid them, but language not actionable *per se*, in the absence of extrinsic circumstances, will not be so regarded, even after verdict.

The demurrer was improperly overruled, and for this error the judgment should be reversed.

PER CURIAM.—It is therefore ordered upon the foregoing opinion that the judgment be, and it is hereby, in all things reversed, at the appellee's costs, with instructions to sustain the demurrer to the second paragraph of the complaint, with leave to amend, etc.