Seller *v.* Jenkins.

No. 11,339.

## SELLER *v.* JENKINS.

SLANDER.— *Words Actionable.—Public Indecency.*—Words, which in their common acceptation, taken as a whole, charge the crime of public indecency as defined by the statute, are actionable *per se.*

SAME.—*Slanderous Words.*—In order that words should be slanderous, it is not necessary that they should describe the offence with technical accuracy ; it is sufficient if the words uttered are such as convey to the minds of the hearers an imputation of a crime.

SAME.— *Words.—Provincial Meaning.—Pleading.*—Where words have a provincial meaning, that meaning must be averred as a substantive fact, and the ordinary meaning of words can not be changed by a mere innuendo.

EVIDENCE.— *Witness.—Impeachment.*—A witness may be contradicted by evidence showing that he has made statements directly relevant to the subject-matter of the action, contradicting the testimony given on the witness stand, but he can not be impeached by contradiction upon merely collateral matters.

SAME.—*Effect of Evidence of Contradictory Statements.*—Evidence of contradictory statements extends no further than the question of credibility ; it does not tend to establish the truth of the matters embraced in the contradictory statements.

SAME.—*Cross-Examination.*—A witness may be impeached upon statements made by him on cross-examination, when such statements are not as to merely collateral matters.

SAME.—*Degree of Contradiction between Statements out of Court and Testimony in Court.*—There must be contradiction between the statements out of courts and the testimony of the witness, in order to make the impeaching evidence competent, but the degree of contradiction does not determine the competency of the impeaching evidence.

From the Montgomery Circuit Court.

*J. Wright* and *J. M. Seller,* for appellant.

*G. W. Paul, M. D. White* and *J. E. Humphries,* for appellee.

ELLIOTT, C. J.—It is an indictable criminal offence for a man to make an indecent exposure of his person in a public place and in the presence of other persons, and such an offence is punishable by imprisonment. *Ardery* v. *State,* 56 Ind. 328. Where the defendant utters words charging the plaintiff with an indictable offence punishable by imprisonment, the words are, as a general rule, deemed slanderous

*per se*, and we think that this rule applies where the words impute to the plaintiff the offence of public indecency under our statute. *Gibbs* v. *Dewey*, 5 Cow. 503; *Brooks* v. *Harison*, 91 N. Y. 83; *Lemons* v. *Wells*, 78 Ky. 117; *Wilcox* v. *Edwards*, 5 Blackf. 183. The offence of public indecency subjects the person guilty of it to a degrading corporal punishment, and is, in itself, an offence involving moral turpitude, and words charging such an offence have always been held to be actionable *per se*. 2 Leigh's N. P. 1350; *Onslow* v. *Horne*, 3 Wils. 177; Starkie Slan. 41.

It is not necessary that the words uttered should be such as describe the offence imputed by them with technical accuracy. *Wilson* v. *McCrory*, 86 Ind. 170. It is, however, necessary that the words uttered should be such as convey to the minds of the hearers an imputation of a crime. If the words used are such as produce upon the minds of those who hear them an impression that the plaintiff was guilty of a crime, they are actionable, although they may not fully describe an offence. *Drummond* v. *Leslie*, 5 Blackf. 453. If the words taken altogether are such as in their popular or ordinary signification charge a crime, then they are slanderous *per se*. *Morgan* v. *Livingston*, 2 Rich. 573; *Cass* v. *Anderson*, 33 Vt. 182; *Colman* v. *Godwin*, 3 Dougl. 90 (2 B. & Cr. 285). Where the words used have a provincial meaning, and it is that meaning that gives the words the force and effect of charging a crime, then that provincial meaning must be averred as a traversable fact. *Stucker* v. *Davis*, 8 Blackf. 414; *Harper* v. *Delp*, 3 Ind. 225; *Dodge* v. *Lacey*, 2 Ind. 212; *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339; *Jones* v. *Diver*, 22 Ind. 184; Odgers Libel and Slan. 110. An innuendo can not change the ordinary meaning of language, and if the language used is not susceptible of the meaning ascribed to it, the pleading is not aided by the statements of the innuendo. *Hays* v. *Mitchell*, 7 Blackf. 117; *Miles* v. *VanHorn*, 17 Ind. 245; *Ward* v. *Colyhan*, 30 Ind. 395; *Hart* v. *Coy*,

40 Ind. 553; *McFadin* v. *David*, 78 Ind. 445; S. C., 41 Am. R. 587; *Pollock* v. *Hastings*, 88 Ind. 248.

There is no allegation in the complaint before us that the words had a provincial meaning, and as the meaning of the words can not be changed by innuendo, the complaint must be adjudged bad, unless the words can be held to bear the meaning ascribed to them by the pleader. In determining what meaning the words alleged to constitute a slanderous charge shall have, it is proper to consider the entire statement, and not merely detached parts of it, and it is also proper to consider the circumstances under which they were uttered. Townshend Slan. and Libel, 181, 186. The question is, not what meaning the defendant intended to convey, but what meaning did the words, taken as a whole and considered with reference to the transaction of which they were spoken, convey to the minds of those who heard them? Odgers Libel and Slan. 93, 99; *Branstetter* v. *Dorrough*, 81 Ind. 527. The defamatory words alleged to have been spoken by the defendant are thus set forth: " I saw something I never saw before; I saw a drunken Quaker; it was Jenkins, Jane Cox's son-in-law (meaning this plaintiff, who is a son-in-law of Jane Cox, and who is called a Quaker); he (the plaintiff meaning) was down at Marcus Mote's mill (meaning Marcus Mote's mill in Smartsburg, Montgomery county, Indiana, and is a public place), and was drunk; there were two women in the wagon, and he (plaintiff meaning) took his old root out and pissed before the women (meaning that plaintiff took out his penis and did then and there urinate in the presence of the women and did make an indecent exposure of his person.) " Taking all the language used into consideration, we think that it charges the commission of an act of public indecency by an indecent exposure of the person. It is true that the word " root " does not signify the male organ of generation, but when this word is considered in connection with the words with which it is associated, it is plain that the meaning conveyed to the hearers was, that an indecent exposure of a pri-

Seller v. Jenkins.

vate part of the person had been made. The word "pissed" has a definite and well known meaning, and describes the act charged to have been done by the plaintiff in such a way as to plainly convey to the hearers the speaker's meaning, and in describing what was done this term so clearly affixed a meaning to the words with which it was associated that those who heard could not have been in doubt as to the part of the person the plaintiff was charged with having exposed. In *Com.* v. *Kneeland*, 20 Pick. 206, Chief Justice SHAW said: "If therefore obscure and ambiguous language is used, or language which is figurative or ironical, courts and juries will understand it according to its true meaning and import, and the sense in which it was intended, to be gathered from the context, and from all the facts and circumstances under which it was used." *Vanderlip* v. *Roe*, 23 Pa. St. 82; *Dellevene* v. *Percer*, 9 Dowl. P. C. 244; *Branstetter* v. *Dorrough*, 81 Ind. 527, *vide* auth., p. 529.

The general rule is that a cross-examination must be confined to the subject-matter of the direct examination, but this rule does not apply where questions are propounded for the purpose of laying the foundation for an impeachment of the credibility of the witness. A witness may be impeached upon matters directly connected with the subject-matter of the action, but not upon collateral matters. The question before us in this instance is whether the matters upon which questions were asked on cross-examination were collateral to the subject of the action, for, if they were, then an error was committed in allowing the questions on cross-examination; if they were upon matters not collateral, then the ruling of the trial court was right. The answer of the appellant was in a single paragraph, and justified the charge made by the appellant, on the ground that the charge was true. Appellant was called as a witness, and on his direct examination testified to matters tending to establish his answer, and also testified that he did not charge the appellee with the offence of public indecency,

nor so intend to charge. Among the questions asked him on direct examination was this: "State if at any time, and in your conversations with any persons to whom you related this transaction, you said that you had seen Cyrus Jenkins down there in this affair, if you had any intention of charging him with the commission of any crime that would subject him to a fine and imprisonment?" The answer to this was: "No; I had not." The appellant also testified that he had no malice against the appellee; and he, the appellant, further stated the name of the person to whom he first spoke of the matter, and gave the names of the persons from whom he heard of the alleged act of indecency. On cross-examination the appellee was permitted to ask the appellant whether he had not, at times and places named, made certain specified statements to persons designated in the questions, and on the ruling admitting this evidence arises the question for our decision.

The answer presented a single issue, and that issue was whether the charge embodied in the words of the appellant was or was not true, but the subject-matter of the action was the slanderous utterances. The jury had before them the whole controversy, for they could not intelligently award a compensation without considering the entire subject, which was before them by the pleadings, and borne upon in a material degree by appellant's testimony in the direct examination. In technical exactness, the issue was whether the charge was true, for the utterance of the slanderous words was admitted; so that in strictness it can not be said that the evidence was directly addressed to the issue, but although not in strictness directly addressed to the issue, it was directly and materially connected with the subject-matter of the action, and was relevant to the case; it did, in truth, constitute a most material part of the case. We are unable to perceive how a matter materially and directly connected with the subject-matter of the action, and relevant to the case, can be said to be collateral. We understand the rule to be that a distinc-

tive collateral fact can not be inquired into for the purpose of impeaching a witness, but we also understand that where the fact is not collateral the inquiry is proper. Starkie says: " It is here to be observed, that a witness is not to be cross-examined as to any distinct collateral fact for the purpose of afterwards impeaching his testimony by contradicting him." 1 Starkie Ev. 200. At another place this author says: " The rule does not of course exclude the contradiction of the witness as to any facts immediately connected with the subject of inquiry, which in themselves would otherwise be legitimate evidence in the cause." 1 Starkie Ev. 203. Another English author says: " In accordance with this general principle, a witness may be cross-examined as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony." Taylor Ev., sec. 1300. Greenleaf says: " But it is a well-settled rule that a witness can not be cross-examined as to any fact, which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony." 1 Greenl. Ev., section 449. In *Lawrence* v. *Lanning*, 4 Ind. 194, Starkie's statement of the rule was adopted, and so it was in *Ware* v. *Ware*, 8 Greenl. 42. In *Com.* v. *Hunt*, 4 Gray, 421, it was said: " The rule, which excludes all evidence tending to contradict the statements of a witness as to collateral matters, does not apply to any facts immediately and properly connected with the main subject of inquiry." It is true some of the cases criticise one of the expressions of Starkie. *Attorney General* v. *Hitchcock*, 1 Exch. 91; *Hildeburn* v. *Curran*, 65 Pa. St. 59. These decisions, however, do not go to the extent of limiting the right to cross-examine, for the purpose of laying the foundation for an impeachment, to particular matters testified to by the witness on his direct examination, nor do they limit the cross-examination to such matters as bear directly and immediately upon the issue.

The effect of proving contradictory statements extends no

further than the question of credibility. Such evidence does not tend to establish the truth of the matters embraced in the contradictory statements; it simply goes to the credibility of the witness. *Davis* v. *Hardy*, 76 Ind. 272; *Hicks* v. *Stone*, 13 Minn. 434. This consideration, in itself, supplies a strong reason for allowing a liberal latitude in cross-examining, for the purpose of laying the foundation for impeachment, for a witness who tells a falsehood concerning a matter incidentally connected with the subject of the action is as likely to testify untruly as if the falsehood had directly affected the issue. It is difficult to perceive why a material falsehood concerning a matter collaterally related to the main question is not as effective against the credibility of the witness as one immediately bearing upon the question. The courts do not put the rule, that a witness can not be impeached upon collateral matters, on the ground that the nearer the false statement is to the main issue, the stronger is its effect upon the testimony of the witness; it is put upon an entirely different ground. By one court it is put upon the ground that the time of the court is too limited to permit collateral inquiries. *Attorney General* v. *Hitchcock, supra.* An older and stronger reason is that stated in the leading case of *Spenceley* v. *DeWillott*, 7 East, 108, and that reason is that such a practice would confuse the jury by an interminable multiplication of issues. It is quite clear that the reason on which the rule rests can have no application to such a case as this, and where the reason of the rule fails the rule itself fails. Here the questions asked on cross-examination were directly connected with the most important part of the subject-matter of the action, and they were also connected with the subject-matter of the examination in chief. There could be no confusion, because from first to last the evidence was directed to a single subject-matter. It is, indeed, very doubtful whether they would not have been legitimate even upon a cross-examination, where no impeachment was proposed. *DeHaven* v. *DeHaven*, 77 Ind. 236.

It is not necessary that the impeaching testimony should be directed to a contradiction of the testimony given on the direct examination; it is competent when it contradicts statements made by the witness to questions propounded to him on cross-examination. There are cases in our own reports applying this rule, although the rule is not stated in terms. In *Dillon* v. *Bell*, 9 Ind. 320, the court reversed the judgment because of the refusal to allow a witness to be contradicted as to a particular matter brought out on cross-examination. In *Brown* v. *State*, 24 Ind. 113, the appellant was prosecuted for selling liquor to a minor, and it was held proper to ask a witness, on cross-examination, whether he had not voted for two years, and this ruling was placed on the ground that the question was proper for the purpose of impeachment. *Thompson* v. *State*, 15 Ind. 473, holds that it is proper to contradict the witness as to statements made on cross-examination.

The Supreme Court of New York, in *Greenfield* v. *People*, 13 Hun, 242, approved the rule as we have stated it, and said: "It is further objected, however, by counsel for the plaintiff in error, that in some instances the matters in respect to which evidence of contradictory statements was received, were elicited on the cross-examination of the witnesses sought to be contradicted, and not on their examination in chief. Such was the fact, but we do not understand that any rule of evidence was violated thereby, the matters as to which the witnesses were contradicted being pertinent to the issue." The statement of the rule is made by an elementary writer in these words: "It is not necessary, in order to introduce such contradictory evidence, that it should contradict statements made by the witness in his examination in chief. Ordinarily the process is to ask the witness on cross-examination whether on a former occasion he did not make a statement conflicting with that made by him on his examination in chief. But the conflict may take place as to matters originating in the cross-examination; and then, if such matters

are material, contradiction by this process is equally permissible." Whart. Ev., section 552. Matters originating on the cross-examination must be such as are connected with the subject-matter of the action, for if they are collateral and wholly foreign to the issue, they can not be inquired into even for the purpose of impeachment, and we are not to be understood as holding that matters foreign to the subject-matter of the action, or wholly irrelevant to the issue, can be used for the purpose of impeachment, but we hold, with the authorities cited, that where the matters properly come up on cross-examination, they may be made use of for the purpose of impeachment, though the specific matter was not explicitly developed in the direct examination.

In technical strictness, the term "issue," when used with reference to pleadings, signifies the disputed point or question. Stephen Pl. 25. In a case like this, where there is a plea of justification, averring the truth of the charge, there is but a single issue, and to the issue thus joined the evidence must be relevant. By the term "relevant" we do not mean that the evidence shall be addressed with positive directness to the disputed point, but we mean evidence which, according to the common course of events, "either taken by itself or in connection with other facts, proves or renders probable the past, present, or future existence or non-existence of the other." Stephen Ev., art. 1 ; Best Principles of Ev. 257, n. It is not necessary that the fact offered in evidence should bear immediately and directly on the main dispute, for, to again quote from Stephen, "Facts which, though not in issue, are so connected with a fact in issue as to form part of the same transaction or subject-matter, are relevant to the fact with which they are so connected." Stephen Ev., art. 3. Wharton says: "Relevancy is that which conduces to the proof of a pertinent hypothesis." 1 Whart. Ev., section 20. In the case before us, the testimony of the appellant as to facts tending to establish the truth of his charge was a relevant fact, and evi-

dence of prior statements concerning the same fact are connected with it as directly and immediately as one fact can possibly be connected with another. His statements concerning the matter which, as a witness, he declares to be true, must be relevant to the issue, even using that word in a strict technical sense. If his statements out of court are untrue, then they conduce to the proof of a pertinent hypothesis, namely, the hypothesis that the appellant's statements tending to establish his charge were not true, so that even taking the word " issue " in its strict technical sense, evidence of statements containing an account of his charge against the appellee are relevant. That the statements given out of court may tend to discredit the statements made in court tending to prove the plea of justification, is evident when it is brought to mind that if, out of court, he made one charge, and in court testified to the truth of a different one, there would be a material inconsistency in his testimony.

There must be contradiction between the statements alleged to have been made out of court and those made on the witness stand, but the degree of contradiction does not determine the competency of the impeaching testimony, however much that consideration may affect its potency. In *Tinklepaugh* v. *Rounds*, 24 Minn. 298, the court said: "The admissibility of the discrediting testimony does not depend on the degree of variance between it and the subsequent testimony. If it differs in any material particular it is for the jury to determine what effect such difference in statements shall have on the witness' credit." It is easy to perceive that accounts of the same transaction given to persons out of court might exert a potent influence upon testimony given to establish the truth of a statement founded upon that same transaction. If the accounts of the same transaction did not agree, then the inconsistency or contradiction would be matter for the jury to consider in determining whether the plea of justification was or was not sustained. If there were distinct

transactions, then a different rule would apply, but there was here but a single occurrence, and, both in court and out of court, the statements of the witness were directed to that one occurrence. Judgment affirmed.

Filed Oct. 7, 1884.