HUBERT P. TAUSSIG, Respondent, v. ABRAHAM SCHIELDS, Appellant.

### St. Louis Court of Appeals, May 17, 1887.

1. BAILMENTS—FOR HIRE—NEGLIGENCE—BURDEN OF PROOF.—A bailee is bound to use ordinary and reasonable care in keeping goods entrusted to his custody, and where they are lost while in his possession, the burden of showing that the loss was not due to his negligence is upon him, and not upon the bailor.

2. PRACTICE—EXCESSIVE VERDICT.—A verdict supported by substan-

tial evidence will not be vacated on the ground that it is excessive, unless it is the manifest result of mistake or prejudice.

3. —— SPECIFIC OBJECTIONS.—Objections to evidence, which are not specific, will not be reviewed on appeal.

4. EVIDENCE — MEMORANDUM TO REFRESH MEMORY. — A memorandum, known by the witness to have been correct when made, may be used by him to refresh his memory, although made by another person.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Affirmed.*

A. A. PAXSON, for the appellant.

GEORGE W. TAUSSIG and LEE SALE, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The petition contains three counts, but the first and third were dismissed at the trial, and the cause was submitted to the jury on the issue formed upon the second. This count alleged that the plaintiff, being the owner of a quantity of jewelry, entrusted the same to the defendant to sell for the plaintiff, for a reasonable reward, and that the defendant so negligently kept the jewelry that it became wholly lost to the plaintiff. The answer, after a general denial, admitted that the plaintiff entrusted certain jewelry to the defendant to sell for the plaintiff, though not as much as that alleged in the plaintiff's petition; that all that portion of the same, consisting of precious stones, was returned to the plaintiff, and that the rest was stolen from the defendant, although kept by the defendant in a careful way, and without fault of the defendant. Upon this issue the case went to trial before a jury.

The plaintiff gave evidence tending to show that he entrusted a large quantity of jewelry, consisting of rings, bracelets, and various other pieces, to the defend-

ant, to be sold for the plaintiff, for a reasonable reward, and that the defendant kept the same for a considerable length of time, and failed to return the same to the plaintiff, though often requested so to do, and, finally, claimed that the jewelry had been stolen from him, and offered to pay the plaintiff one hundred dollars for the loss, which the plaintiff declined. It, also, appeared that another parcel of jewelry, consisting of certain loose stones, had been entrusted by the plaintiff to the defendant, to be sold in like manner, and had been returned by the defendant to the plaintiff. Concerning the loss of the articles embraced in this action, the defendant's evidence admitted his receiving articles of that kind, though not as great a number of pieces as that claimed by the plaintiff. There was, also, a great discrepancy between the evidence of the plaintiff, and of the defendant, in respect of the value of the articles of jewelry embraced in this controversy. The plaintiff's evidence tended to show that they were, at the date when they were lost, of the value, at wholesale, in the St. Louis market, of from five hundred and fifty to six hundred dollars, and, possibly, even more than the last named figure. The defendant's testimony, however, was to the effect that they were of the value of one hundred to one hundred and fifty dollars only, and that the plaintiff had intimated a willingness to take for them the sum of one hundred and seventy-five dollars. The plaintiff would not say, in giving his own testimony, that he had not stated to the defendant that he (plaintiff) had sold another, and a different, lot of jewelry to one Bauman, for one hundred and sixty-two dollars, and that he had told the defendant that he ought to obtain for this lot one hundred and seventy-five dollars. The plaintiff excused this statement by testifying that he did not know the value of the jewelry at the time, and did not know that it had previously been valued by Mr. Gregg, an expert jeweler, at the sum of six hundred dollars.

The defendant's evidence also tended to show that, on the night of April 13–14, 1883, the defendant had left this jewelry, together with some other jewelry, old coins, pipes, and, perhaps, other articles of his own, in a box in his office, which was on the third floor of the building known as 513 Walnut street, in St. Louis ; that during the night the room was entered by burglars, they forcing open the doors ; that this box was forced open, and all its contents carried away, together with some articles of clothing kept by the defendant in his closet ; that, although he used due diligence to discover the thieves, and reclaim the articles, he was never able to obtain any trace of them.

The court directed the jury, that, if they returned a verdict for the plaintiff, they should state that it was returned under the second count of the petition, the other counts not being submitted to them for decision. The jury returned a general verdict for the plaintiff, " in the sum of six hundred dollars, interest included." Upon this verdict judgment was entered, and from this judgment the defendant appeals. The points relied on by the appellant will be considered in their order.

I. The first point is, that there is no proof whatever that the defendant received any property from the plaintiff, in the year 1884, as claimed in the second count of the petition, and that there is no sufficient description of the property. (1) It appears, from the evidence, that the property was delivered by the plaintiff to the defendant, in the fall or early in the winter of 1883 ; that the loss or theft of the jewelry happened, as before stated, in April, 1884 ; that the defendant did not notify the plaintiff of the loss until the fall of 1884. It is needless to say that a variance in dates, of this nature, is immaterial, the transaction being otherwise distinctly identified by the testimony. Even in a criminal indictment, although it is necessary to lay the date of the offence, it is not, in general, necessary to prove the date

as laid. For stronger reasons, such strictness is not required in civil cases. (2) Nor are we of opinion that the assignment, that there is no sufficient description of the property, is well taken. The plaintiff's agent, who delivered the property to the defendant, trusted to the honor of the defendant, and neglected to take a detailed receipt, piece by piece, for the property; but a list of the property was in his possession, from which it was identified and its character described.

II. The next assignment of error is, that the damages are excessive. Whether the damages are excessive depends upon whether the jury believed the witnesses who testified for the plaintiff, or whether they believed the testimony of the defendant. Two expert witnesses for the plaintiff testified as to the value of the jewelry : Mr. Jolivet, who claims to have manufactured the articles, and Mr. Gregg, an expert jeweler. Mr. Jolivet's estimate of the value of the articles, at wholesale prices, that is, their value to the manufacturer, places the aggregate value at seven hundred dollars, in 1884, and five hundred and fifty dollars at the date of the trial, which was in November, 1886. The final conclusion of this witness was : "I should judge the goods, from what I have seen and know, and the statement that I have made out, the memorandum that I have had, to be worth from seven hundred to eight hundred dollars in the store." Mr. Gregg had been called upon, as an expert, to value the jewelry, while it was still the property of Mr. Jolivet, for the purpose of enabling Mr. Jolivet to obtain a loan, upon a pledge of them, from Mr. Carey, of Alton. He placed the value of six hundred dollars upon the articles, regarding them as not worth much more than that value as old gold, and advised that they would be good security for a loan of that amount. The list of jewelry, which Mr. Jolivet originally prepared for delivery to Mr. Carey, contained one hundred and two pieces, all but eleven of which were shown, by the plaintiff's evidence, to have been delivered by him to Carey,

by Carey to the plaintiff, and by the plaintiff to the defendant. A detective, who had been called in by the defendant to inspect his premises, and take an inventory of the stolen property, on the morning after the robbery, testified, to the best of his recollection, that the defend-ant claimed to him that all the property in the box was worth between four hundred and fifty and five hundred and fifty dollars. This included everything in the box, the defendant's property and all. The defendant's evi-dence tended to show that his property, which was in the box, was of the aggregate value of from two hundred to two hundred and fifty dollars. The character and value of the eleven articles of the original list, which had not been delivered to the defendant, does not appear; and, though the evidence is somewhat blind on the point, we infer that they were not among the articles, the value of which is testified to by Jolivet and Gregg. It can not, we think, be said that the award of damages, made by the jury, was not within the limits of the evidence, when it is considered that they were at liberty to allow interest at six per cent. per annum, in the way of dam-ages, which interest they did allow and include in their verdict, and when it is remembered that the period during which they must have allowed six per cent. in-terest, was between two and three years. The verdict of the jury is, apparently, as large as the evidence would warrant; possibly much larger than it ought to have been; but, clearly, we can not reduce it, without undertaking to perform the office of a jury in passing upon the credibility of the testimony, which we have no power to do.

III. Objection is made that the plaintiff was per-mitted to testify in his own behalf that, on the twentieth of September, 1884, the defendant, in response to re-peated demands to return the jewelry, appeared at the plaintiff's office and stated that the jewelry was lost; that it had been lost in April, and offered to pay the plaintiff one hundred dollars to close the matter. This

evidence was objected to by the defendant, "as irrelevant and immaterial." The court responded : "He may state what the defendant said about the loss." The bill of exceptions next recites : "To which action of the court the defendant duly excepted at the time." The argument now is, that this evidence was inadmissible, because it was an offer to compromise. It nowhere appears that it was made as an offer to compromise, nor does it appear that it was objected to on that ground. It appears to have been offered as an admission of the plaintiff, that that much was due, and as such it seems to have been competent. At all events the objection was so general that, under the repeated rulings of the supreme court and of this court, it saves nothing for review. *Peck v. Chouteau* (Mo.) 3 S. W. Rep. 577 ; *Primm v. Raboteau*, 56 Mo. 407 ; *Margrave v. Ausmuss*, 51 Mo. 561, 566; *Buckley v. Knapp*, 48 Mo. 152, 164; *Woodburn v. Cogdal*, 39 Mo. 222.

IV. A counterpart assignment of error is, that the court, upon the plaintiff's objection, ruled out evidence of the same character, when offered by the defendant. The evidence, to which this objection refers, was that part of the following letter, written by the plaintiff's attorney to the defendant, which is included in brackets :

"April 29, 1885.

" *Mr. Abram Schields, Singleton Street.*

"Dear Sir:—My brother urges me to bring his demand against you to conclusion.

" He values the jewelry lost to him at not less than five hundred and fifty dollars.

" [ He will accept from you, in full payment of his demand against you, if paid before May 10, 1885, the sum of three hundred dollars.] Unless this amount is paid, we will be compelled to bring his suit.

" Yours,

" Geo. W. Taussig."

The part included within the brackets was distinctly

objected to by the plaintiff, on the ground that it was offered as a compromise. It is manifest, from the letter itself, that the objection was well taken. The letter contained the statement that the plaintiff valued the goods at five hundred and fifty dollars, and then followed the statement that he was willing to settle for three hundred dollars. This, on its face, was an offer to compromise, and the clause which the court ruled out was, therefore, not competent evidence against the plaintiff, as an admission by him that the goods were not worth more than three hundred dollars. The ruling was strictly correct.

V. An ingenuity in multiplying assignments of error directs our attention to the objection that the plaintiff's witnesses were permitted, over the defendant's objections, to make answers not responsive to questions, and thus cut off the defendant's right to object until after the injury was done, and to inject argument and innuendo into their answers. We have examined the pages of the record to which this assignment refers, and find nothing there which is worthy of observation.

VI. Objection is made, that a witness for the plaintiff was allowed to use a memorandum to refresh his recollection, when testifying as to the articles of jewelry which he had delivered to the defendant, which memorandum consisted of a list of the articles, which list had not been made by the witness himself. This objection is not well taken. The witness testified that a memorandum was made under his eye, item by item, and that the various items were checked off on the memorandum, by him in person. This was sufficient to entitle him to use the memorandum for the purpose of refreshing his memory. It is not in all cases necessary, in order to entitle a witness to use a memorandum to refresh his memory, that the memorandum should have been made by the witness himself. It is sufficient that the witness knew, at the time when the memorandum was made, that it was correct. *Railroad v. Blanton*, 63 Tex. 109 ;

*White v. The State*, 8 Tex. App. 57, 62; *Clifford v. Drake*, 110 Ill. 135; s. c., 14 Bradw. 75; *Davis v. Field*, 56 Vt. 426, 428; *Commonwealth v. Ford*, 130 Mass. 64; *Huff v. Bennett*, 6 N. Y. 337; *Henry v. Lee*, 2 Chit. Rep. 126; 1 Whart. on Evid., sect. 516; *Commonwealth v. Fox*, 7 Gray, 585; *Berry v. Jourdan*, 11 Rich. L. 67; *Railroad v. Liddell*, 69 Ill. 639; *Cool v. Snover*, 38 Mich. 562.

VII. We see no force in the points that, when the defendant testified as a witness, counsel for the plaintiff was permitted to ask him, on his cross-examination, whether he had not testified in a deposition contrary to some of the facts to which he had testified on his examination in chief. It is always admissible to ask a witness, on cross-examination, for the purpose of affecting his credibility in the minds of the jurors, whether he has not made contrary statements on previous occasions; and, in the application of this rule, it is utterly immaterial on what previous occasion, whether on oath or not, or in what manner such contrary statements may have been made, provided no rule of public policy excludes the evidence. *The State v. Trickell*, 13 Nev. 502, 508; *Lohart v. Buchanan*, 50 Mo. 201; *The State v. Foye*, 53 Mo. 336; *The State v. Elkins*, 63 Mo. 159; *Howe Machine Co. v. Clark*, 15 Kan. 492; *Burdie v. Hunt*, 43 Ind. 382, 389; *Craig v. Roher*, 63 Ill. 325; *The People v. Devine*, 44 Cal. 452; *Seller v. Jenkins*, 97 Ind. 430, 435; *Markell v. Moudy*, 13 Neb. 323, 327; *Morrison v. Meyers*, 11 Ia. 553; *Samuels v. Griffith*, 13 Ia. 103; *Stephens v. The People*, 19 N. Y. 549. If the question, thus propounded to the witness for the purpose of impeaching his credibility, relates to a collateral matter not pertinent to the issue on trial, his answer thereto will be conclusive. The cross-examining party will not be allowed to contradict him, by showing that he did make the previous statements which he denies having made; since, to allow this to be done would extend the investigation too far into collateral inquiries. *Lohart v.*

*Buchanan*, 50 Mo. 201 ; *McKern v. Calvert*, 59 Mo. 243 ;
*Iron Mountain Bank v. Murdock*, 62 Mo. 70; *Hawkins
v. Pleasants*, 71 N. C. 325 ; *Att'y Gen'l v. Hitchcock*,
1 Exch. 91 ; *Spenceley v. De Willott*, 7 East, 108 ; *Seller v.
Jenkins*, 97 Ind. 430, 439 ; *Sloan v. Edwards*, 61 Md.
90 ; *Harris v. Wilson*, 7 Wend. 57 ; *The State v. Pat-
terson*, 74 N. C. 157 ; *Hester v. Commonwealth*, 85 Pa.
St. 139, 157; *The People v. Furtado*, 57 Cal. 346 ; *The
People v. Webb*, ( Cal.) 11 Pac. Rep. 509 ; *Kaler v.
Builders Co.*, 120 Mass. 333 ; *Henderson v. The State*,
1 Tex. App. 432. These are among the most elementary
rules of evidence, and decisions could be supplied indefi-
nitely in support of them. There is nothing in the rul-
ing of the supreme court in *Priest v. Way* ( 87 Mo. 16 ),
that impugns them. The ground of the ruling in that
case was, that the person whose deposition was read had
not had the opportunity of explaining, which the rule
above stated is intended to give to the witness, by re-
quiring a foundation first to be laid by interrogating
him as to the previous contradictory statement.

VIII. The assignment of error, that there was not
sufficient proof of negligence to hold the defendant to
legal liability for this loss, is disposed of by the ruling
of this court in *Arnot v. Branconier* ( 14 Mo. App. 431,
434 ), under which the deposit of the goods with the
defendant, the demand of the plaintiff for their return,
and the refusal of the defendant to return them being
shown, the plaintiff made out a *prima facie* case, which
cast the burden upon the defendant of exonerating him-
self by showing that the loss of the articles took place,
notwithstanding he had exercised due care as their cus-
todian. In that case, we followed *Wiser v. Chesley* (53
Mo. 547 ), which was the latest decision of the supreme
court upon the subject, and which we understood to
have the necessary effect of overruling previous contrary
decisions. In this case, therefore, it was a question for
the jury, whether the defendant exonerated himself by
showing such diligence. In order so to exonerate him,

it would be necessary for them (1) to believe his testimony; and (2) to say, upon his testimony, that, in keeping the jewelry in a box in his office, instead of keeping it locked up in his safe, he exercised reasonable care as its custodian. In rendering their verdict against him, they may have placed their conclusion upon the one ground or the other. They may, on the one hand, have refused full credit to his testimony, in view of his unsatisfactory conduct in withholding the knowledge of this loss from the plaintiff for five months, and in view of other circumstances; or, on the other hand, they may have been of opinion that the leaving of the jewelry in a box in his office over night for several nights was not exercising the diligence of a good business man as its custodian. On neither of these points could we overrule the jury, without taking upon ourselves the discharge of their exclusive office.

IX. The final point is, that the verdict does not state that it was rendered under the second count, as required by the instruction of the court. This is an afterthought on the part of the appellant, it not having been brought to the attention of the court until his amended motion for a new trial. For this reason, it is not entitled to favorable consideration. It is expected of counsel for parties litigant that they will be in court when verdicts are returned, and good faith in the conduct of trials requires them to object seasonably to formal defects in verdicts, where such defects are discovered. It is true that the rule is, that, where the petition contains several counts stating different causes of action, the verdict must state under which count it is returned. *Bricker v. Railroad*, 83 Mo. 391, 394. But where, as in this case, all of the counts of the petition, save one, have been withdrawn from the consideration of the jury, and they are distinctly advised of this fact by the court, in its instructions, it does not appear that any prejudice could have resulted from the failure of the jury to state that they returned their verdict under the second count.

Indeed, it does not appear that so much of the instruction of the court as required them to state this in their verdict, was at all necessary, after informing them that the other counts had been withdrawn from their consideration. It has been ruled in this state that, where the petition contains two counts, manifestly for the same cause of action, one of which is good and the other bad, the good count will support a general verdict for the plaintiff. *McKee v. Calvert*, 80 Mo. 348; *Brownell v. Railroad*, 47 Mo. 240. In this case, the three counts were for the same bailment and conversion or loss; and, for stronger reasons, the second count will support a general verdict, where the other two counts were distinctly withdrawn from the jury.

With the concurrence of Rombauer, J., the judgment will be affirmed. It is so ordered. Lewis, P. J., is absent.