THOMPSON v. BALKE.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1917.)

No. 3058.

1. APPEAL AND ERROR ⬉954(1)—REVIEW—QUESTIONS PRESENTED.
An appeal, after defendant's application to rehear motion for preliminary injunction was denied, presents for review only the propriety of the preliminary injunction complained of.

2. CONTRACTS ⬉147(3)—CONSTRUCTION—RULES.
In ascertaining the intention of the parties, the contract as a whole should be considered.

3. INJUNCTION ⬉136(2)—SUBJECTS OF PROTECTION.
Defendant, a distiller with a large quantity of whisky in bond, entered into a contract whereby plaintiff, after buying certain whisky, was given the option of buying whisky made in subsequent years. One clause of the contract provided that defendant should bottle whiskies for plaintiff at

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fixed prices, and another clause provided that the contract should become void on plaintiff's failure to exercise in due season any annual option provided for, and that if, at termination, there should remain in bond any whiskies previously purchased, defendant should bottle the same according to agreement. A supplemental contract allowed plaintiff to do his own bottling, and a later agreement provided that, on its termination, defendant should bottle whiskies still in bond and sold by plaintiff to his customers. *Held* that, on termination of the contract by plaintiff's failure to exercise the option provided, plaintiff was, in view of the whole contract, and the fact that bonded whisky could only be bottled in defendant's bottling house appurtenant to the distillery where the whisky was bonded, entitled under the evidence now produced to a preliminary injunction, preventing defendant from excluding plaintiff from use of the bottling house.

4. APPEAL AND ERROR ⬤⟲954(1)—PRELIMINARY INJUNCTION—DISCRETION.
    An order granting a preliminary injunction should be affirmed, where the granting of the injunction was not an abuse of discretion, and there was a fair case for its exercise.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by Rudolph F. Balke against John B. Thompson. From a decree granting a preliminary injunction, defendant appeals. Affirmed.

Hazelrigg & Hazelrigg, of Frankfort, Ky., and John B. Thompson, of Harrodsburg, Ky., for appellant.

Lawrence Maxwell and Joseph Wilby, both of Cincinnati, Ohio, and Thos. D. Slattery, of Covington, Ky., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. Appeal from an order granting a preliminary injunction. The case is this:

On December 21, 1908, appellant was the owner of the "Old Jordan" distillery, at Harrodsburg, Ky., where he then had on hand in bonded warehouse about 19,000 barrels of "Old Jordan" whisky of the crops of 1901, 1902, 1903, 1905, 1906, and 1907. On that date he made a contract with the corporation of which appellee was president (and to whose rights he has succeeded), whereby appellee (as we shall call the interest represented by him) agreed to procure for appellant a loan of $90,000 on the latter's note, collateraled by warehouse receipts for whisky, and indorsed by appellee; also absolutely to buy a certain amount of appellant's 1901, 1902, and 1903 crops at given prices. He was given the option of buying, also at given prices, whiskies of the crops of 1903, 1905, 1906, and 1907, on written notice prior to December 1 (later changed to November 1) of the years 1909, 1910, and 1911, respectively. He was given a further option generally of buying all of appellant's future manufacture (at a certain minimum and maximum production) "during the life of the contract," at certain prices based on the prices of grain from year to year, and, specifically, of buying the crops of 1909 and 1910 (there was no 1908 crop) on notice prior to November 1, 1912; the crops of 1911 and 1912 on notice prior to November 1, 1913; the crops of 1913 and 1914 on notice

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

prior to November 1, 1914 (as those option dates were later changed); and thereafter a series of separate annual options extending to January 1, 1935. He was given the exclusive right to use appellant's business name, as well as the trade-name "Old Jordan," during the life of the agreement.

The twenty-first clause of the contract provided that appellant was to bottle the whiskies for appellee on certain terms and prices named. By the thirteenth clause the contract was to "become null and void" in the event of appellee's failure to exercise in due season any annual option provided for, with provision that if at the time of such termination there should remain in bond any whiskies previously purchased by appellee under the contract, appellant should remain under the obligation of clause 21, before referred to, to bottle the whisky under its terms and conditions; by the seventeenth clause, appellee was entitled to free storage for six months from the date of the entry in bond.

By a supplemental contract of April 14, 1909, appellant was relieved from the obligation of free storage, and in consideration thereof the provision for bottling by appellant was abrogated, and appellee was to do his own bottling at the "Old Jordan" distillery; appellant agreeing to deliver the bulk whisky to appellee at the bottling house as required. The original contract was otherwise undisturbed. By a still later contract of December 2, 1910, appellant agreed that in the event of the termination of the original contract, as provided for in its thirteenth clause, he would bottle in bond, at certain stated charges, all Old Jordan whiskies still in bond theretofore acquired by appellee and by him sold to his customers (or by his customers bought "off the market"), with appellee's agreement to bottle. The contract was concededly carried out by appellee until November 1, 1914 (he meanwhile doing the bottling at his own expense under the agreement of April 14, 1909), and the options given him were exercised for all crops to and including those of 1909 and 1910. Appellee expressly disclaimed the right to take the crops of 1912, 1913, and 1914 (there was no crop of 1911); the crop of 1912 being treated, for the purposes of notice, as part of the 1913 crop.

On November 1, 1914, when appellee's right to further purchases ended, appellee had a large amount of bulk whisky of the crops of 1909 and 1910, fully paid for, which he claimed the right to bottle in bond at appellant's bottling house. Appellant, while denying the existence of this right after November 1, 1914 (and accordingly soon thereafter demanding possession of the works, and offering and claiming the right to do appellee's bottling on payment of charges therefor), suffered appellee to use the bottling house (appellant meanwhile bottling therein some of his own whisky) until about December 6, 1916, when appellant caused the revenue officer to wholly exclude appellee. As under the revenue laws appellee's remaining whisky (claimed to be about 7,000 barrels) could be bottled only at appellant's distillery, appellee filed his bill for injunction against interference with his asserted right to bottle. A temporary injunction was ordered (on appellee's giving bond for $25,000) restraining such interference

and directing the reinstatement of appellee in the bottling house for the purpose of such bottling, and the delivery to him of so much of his whisky as he should demand for the purpose. On motion for rehearing appellant represented that a considerable part of appellee's whisky in bulk had been sold by him since November 1, 1914, under agreement for bottling it in bond, and that by the contract of December 2, 1910, appellant was entitled to bottle it; that joint possession of the premises by appellant and appellee was impossible; and that appellant had of his own whisky about 12,000 barrels of the 1912 and 1913 crops ready and eligible for bottling. The answer to the bill had asserted the sale of appellant's whiskies (crops of 1912 to 1914), with privilege of bottling at the distillery on appellee's delivery of possession. The application to rehear was denied.

[1-3] This appeal brings up nothing but the propriety of granting the preliminary injunction. Louisville & Nashville R. R. Co. v. Western Union Telegraph Co. (C. C. A. 6) 207 Fed. 1, 4, 124 C. C. A. 573. The crucial question on the merits is whether the appellee's right to bottle his bulk whiskies then on hand ended November 1, 1914, with the termination of his right to make further purchases. Appellant insists that this result is compelled by the express language of clause 13 of the original agreement, which makes the contract "null and void" on appellee's refusal to exercise in due season any annual option.

We are unable to agree with this conclusion, for the provision just referred to is immediately followed by one equally express retaining appellant's obligation under a later clause (21) to bottle "under the terms and conditions" of that clause all of appellee's whiskies previously purchased and still remaining in bond. True, clause 21 obligates appellant to bottle "during the entire life" of the agreement, and this expression, as used exactly or in substance, in other places in the contract, means the period during which the right to exercise options existed. But to ascertain the intention of the parties the contract must be considered as a whole; and appellant's construction cannot be accepted without nullifying the express agreement of clause 13, obviously designed to meet the very contingency which this case presents. This should not be done. We think, moreover, that the effect of the second contract, so far as concerns the bottling privilege remaining after the right to further options ended, was merely to substitute a right in appellee for an obligation upon appellant; for, while the provision in the second contract relieving appellant from his bottling obligation refers to clause 21 of the original contract (not mentioning clause 13), yet not only does it seem unreasonable to suppose that appellee deliberately intended to give up the important right conferred by clause 13, but by the very last clause of the second contract "all and singular the terms" of the original contract are declared to "be and remain binding upon both parties," "except so far as modified by this supplemental contract," and the provision of clause 13 which we are considering was not in terms modified.

Appellee's asserted right to bottle his bulk whisky in bond thus remained after November 1, 1914, unless taken away by the sixth clause

of the contract of December 2, 1910, the "purpose and intent" of which was declared to be that in the event of the termination of the contract under its thirteenth clause appellant should assume and carry out appellee's obligation and agreement to bottle whiskies theretofore acquired by appellee under the contract and sold by him to his customers, or by the latter bought "off the market," but not yet bottled in bond—such bottling to be done by appellant at the same "terms and rates" agreed to by appellee.

The pleadings do not disclose the circumstances out of which the 1910 bottling agreement arose, or its purpose, and no testimony was introduced. Its intent was thus left to be ascertained solely from the language of the writing (which does not, as in the case of the second or supplemental agreement, state how it came about), in connection with the preceding written agreements. The absence of such information has not rendered difficult an interpretation of the preceding contracts, which speak for themselves.

Judged alone from the face of the writings, we agree with the District Judge that the 1910 provision relates only to whiskies sold subject to a bottling right not yet exercised, and does not affect appellee's right given by previous contracts to bottle whiskies not so sold. We have not the benefit of Judge Cochran's views of its application to whiskies actually so sold, except as may be involved in the denial without opinion of the application for rehearing. We therefore shall not now pass upon the construction of the agreement as it relates to whiskies so sold, nor definitely and conclusively decide its application to goods not so sold. It may be that on final hearing (which no doubt may speedily be had) evidence of the custom of the trade (knowledge of which the District Judge may have had), or of the circumstances out of which the 1910 agreement arose, will make it entirely clear whether the 1910 provision was intended wholly to take the place of the arrangement evidenced by the first and second contracts taken together, or whether, as appellee contends, it was intended only to meet possible cases of purchases from appellee, or on the market, of bulk whisky to be held in bond with bottling right for an indefinite period, which might continue after appellee had ceased to operate the bottling house. Such arrangement would seem naturally to accommodate both parties—the appellee, by not requiring him to operate the works for sporadic and belated bottling; the appellant, by giving him prompt and uninterrupted possession of the works as soon as appellee should cease active bottling, so far as immediately required, of his own bulk goods.

[4] The order awarding preliminary injunction should be affirmed; for this appeal raises only the question whether in awarding it discretion was properly exercised (Interurban Co. v. Westinghouse Co. [C. C. A. 6] 186 Fed. 166, 170, 108 C. C. A. 298); and although, if we could say, as matter of law, that appellee had no right to the relief asked, it would be our duty at least to reverse the order for injunction for lack of room for the exercise of discretion (Bissell Co. v. Goshen Co. [C. C. A. 6] 72 Fed. 545, 550, 19 C. C. A. 25; Shelbyville v. Glover [C. C. A. 6] 184 Fed. 234, 238, 106 C. C. A. 376), such is not

the case here. To say the least, appellee presents a fair question as to the extent of his asserted right, requiring opportunity for its full presentation and final decision. It may well be that as between appellant and appellee the latter's need of protection is more immediate, as the last of his whisky must, under the revenue laws, be removed from bond by July, 1918, if not earlier, while under the law none of appellant's whisky is required to be so removed before 1920, although some of it is already eligible to bottling. It thus cannot be said that the trial court, on the balancing of conveniences and inconveniences to the respective parties, especially in view of the requirement of security, has acted improvidently. Pere Marquette R. R. Co. v. Bradford (C. C.) 149 Fed. 492; Bigelow v. Calumet & Hecla Mining Co. (C. C.) 155 Fed. 869, 881.

In affirming the order below, we recognize the possibility that appellee's possession of the bottling department, whether before or after final hearing, may interfere with appellant's convenience; and it scarcely need be said that appellee's possession should not in any event go farther than necessary for his protection, nor cause unnecessary interference with appellant's needs. The order for injunction does not in terms exact exclusive possession. The District Court not only has the right, on final hearing, in case appellee shall there succeed, to consider the questions how far his possession should go, and the extent to which it should be made exclusive (on which questions we find it unnecessary to say more than already said), but will be left at liberty to exercise its discretion respecting any application, even before final hearing, for the protection of appellant against improper and unnecessary interference and delay.