## GOODMAN v. UNITED STATES.
### No. 4200.

Circuit Court of Appeals, Seventh Circuit.
March 13, 1930.

Richard P. Tinkham and T. P. Galvin, both of Hammond, Ind., for appellant.

James J. Clark, of Hammond, Ind., and George L. Rulison, of South Bend, Ind., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellant's alleged offenses were set forth in an indictment containing eight counts. Each of the first seven charged him with having "unlawfully and knowingly bought, received and had in his possession with intent then and there to convert the same to his own use and knowing the same to have been stolen," certain goods and chattels which were, when stolen, a part of an interstate shipment. The eighth count charged him with a conspiracy with others to commit the substantive crimes set forth in the first seven counts.

A conviction resulted upon counts 2, 3, 4, and 6 only. From the judgment pronounced on this verdict, appellant appeals.

The assignments of error deal largely with the admission and rejection of evidence and certain alleged improper comments of the district attorney. Only one assignment need be considered.

The government, as part of its rebuttal, called a witness, Schechtel, who was asked concerning a certain conversation with defendant's witness Isay. The assignment of error we are about to consider relates to the answer which was given by this witness over objection.

Other evidence disclosed the existence of a criminal enterprise conducted by five or six individuals other than defendant, which had for its object the theft of merchandise from box cars moving in interstate commerce, which stolen merchandise was disposed of through the witness Schechtel, a merchant with a store in Gary, Ind. He was the principal witness for the government. Upon his cross-examination, he was asked concerning a statement by him to one Isay. He denied making the statement. After laying the proper foundation, defendant, as part of his proof, offered Isay as a witness who testified to Schechtel's making the statement as follows: "'Perhaps you can do me a favor. You know, I am in a peck of trouble, and someone has to take care of my wife and family if I am going to jail. Goodman bought some of the goods, and if he does not take care of my family I will send him to the penitentiary. The son of a bitch has plenty of money, so let him pay. Ten Thousand Dollars will take care of my family. I want you to work through Meyer in getting this money from Goodman.' He told me that in substance."

On cross-examination, Isay was asked by government counsel whether he did not make the following statement on this same occasion: "Now listen, Otto, don't be a sucker. You tell the Government the truth. Goodman has been getting away with this stuff for years and if you think he will do anything to help you, you are crazy. You know as well as I do he sent Leo Goodman, his own brother, to the penitentiary for a crime that Louis Goodman himself committed." Isay denied making the statement.

As part of the governmental rebuttal, the witness Schechtel was again placed upon the stand, and was asked this question: "Shortly after you were arrested, did you have a conversation with Max Isay, in which Max Isay said to you, 'Now listen, Otto, don't be a sucker. You tell the Government the truth. Goodman has been getting away with this kind of stuff for years and if you think he will do anything to help you, you are crazy, You know as well as I do he sent his own brother to the penitentiary for a crime that Louis Goodman himself committed,' or words to that effect?" Over objection, he answered, "Yes."

Appellant argues that this testimony was incompetent and irrelevant and also prejudicial.

Was it prejudicial? Appellant was charged with having purchased the goods

stolen by others from an interstate shipment, knowing the goods to have been stolen. The proof supported the government's position that the goods were stolen from an interstate shipment. It likewise established the fact that some of these goods were sold by Schechtel to defendant. Defendant's claim of innocence was predicated upon his denial of any and all knowledge that the goods were stolen. His testimony is to the effect that he bought the merchandise from Schechtel in the ordinary course of business and that he had no reason to believe and did not believe that it was stolen.

Testimony to the effect that appellant had sent his own brother to the penitentiary for crimes which he, rather than his brother, had committed, and that appellant had been getting away with this kind of stuff (crimes such as here under consideration) for years, was not only likely to produce a prejudicial effect on the jurors, but was almost certain to do so.

Not only was such testimony itself hurtful, but government counsel, in his closing address to the jury, based an argument upon it. The record shows:

"Mr. McAleer: * * * Oh, another thing, how he come to meet this man Goodman and to talk about it the first time. There always has to be the first time. Schechtel had been talking about this business. He knew that there was one big place in Gary, and if he could open a market in that place he would be sitting 'jake' as the fellow says. So he took the chance to go to Goodman. *He must have heard before this—took the chance to go to the big market.*

"Mr. Tinkham: If the Court Please, We object to that. There is nothing in the record to show that there was any conduct on the part of this defendant to indicate any such a thing to this witness Schechtel, nothing in the record at all.

"Mr. McAleer: I say he took the chance—

"Mr. Tinkham: There is an objection to that, and I ask that it be withdrawn from the consideration of the jury.

"The Court: I can't remember all the evidence, Mr. Tinkham, and I am not going to limit counsel to just—

"Mr. McAleer: I can draw inferences.

"The Court: He can draw his own inferences and you may make your record.

"Mr. McAleer: He took the chance to go Goodman—

"Mr. Tinkham: Give us an exception.

"Mr. McAleer: —a big man in the town.

"Mr. Tinkham: We ask that the jury be instructed not to consider any statement by counsel which infers that the evidence shows that this place of Goodman's was engaged at any time prior to this charge in receiving stolen goods.

"Mr. McAleer: Now, I want to say that I know this, that this is a trick—

"Mr. Tinkham: Just a minute, Your Honor.

"Mr. McAleer: —of opposing counsel—

"Mr. Tinkham: I want to make of record of this.

"Mr. McAleer: —to keep me from going ahead with my argument. Now, he has had time enough to make a record, plenty of time to make a record.

"Mr. Tinkham: Give us an exception.

"The Court: Yes.

"Mr. Tinkham: I ask that this submission be set aside on that account.

"The Court: Your motion is overruled.

"Mr. Tinkham: Give us an exception.

"Mr. McAleer: See how unfair this counsel is in his movements; don't want me to go on and talk about this, because we have a right to draw inferences. *He knew where the market was and he went to where he could get a big market."*

There was no evidence to support the statement that he (Schechtel) must have heard of appellant's making a market for stolen goods prior to the sale or sales involved in this case excepting the statement attributed to Isay.

Was the testimony properly received? To answer this question, a more detailed statement of the situation which confronted the court is necessary.

Schechtel was the principal witness for the government. In a sense, he was the appellant's accuser. After testifying at length to his own guilty participation in the crimes charged in the indictment, he involved appellant as one who guiltily participated in concealing the stolen merchandise. To disprove such testimony, it was proper for the appellant to show that Schechtel had made other statements which contradicted his testimony given on direct examination or which disclosed a motive for Schechtel's false swearing. Appellant's counsel was therefore clearly within the legitimate limits of cross-examination when he asked Schechtel about a certain statement which that witness made on a date and at a place fixed to one Isay. It is likewise clear that appellant was not

bound by Schechtel's denial. He could, after laying the proper foundation, prove the making of the statement by the witness to whom it was allegedly made. Concerning the materiality and relevancy and propriety of Isay's testimony on direct examination, therefore, there can be, and is, no question. Our inquiry is directed, not to the admissibility of this evidence, but to the dispute of Isay's evidence given on his cross-examination. The testimony offered by the government in rebuttal of Isay's testimony stands in an entirely different light from the evidence offered by appellant to rebut Schechtel's testimony given on cross-examination.

The statement attributed to Isay and which Isay denied making did not dispute anything that he had said on direct examination. Neither did it serve to explain, modify, or qualify his previously given testimony. Nor could it be construed as indicating hostility or ill will toward Schechtel whose testimony he was contradicting. Neither did it, in the slightest degree, tend to impeach or discredit Isay. If true, it would tend rather to confirm Isay's testimony. Its only effect was to inject into the trial of this criminal action other and different charges of misconduct against appellant. It was therefore clearly collateral, and Isay's denial of having made the statement was not subject to rebuttal testimony. Smith v. U. S. (C. C. A.) 10 F.(2d) 787; Johnson v. U. S. (C. C. A.) 215 F. 679, 686, L. R. A. 1915A, 862; Bullard v. U. S. (C. C. A.) 245 F. 841; Rau v. U. S., 260 F. 131; Beyer v. U. S. (C. C. A.) 282 F. 225; Jones, Commentaries on Evidence, vol. VI, p. 4728.

It is true, the government was not bound by the direct testimony given by Isay any more than the defendant was bound by the direct testimony of Schechtel. In each instance, the adversary was permitted to cross-examine the witness in order to discredit his testimony or to qualify or explain it. And, where a witness gives testimony of a part of a conversation such as here disclosed, the opposing party has the right to call out the entire conversation. Jones, Commentaries on Evidence, vol. V, pp. 4589–4592.

But here there was no attempt made to bring out the entire conversation. The question was put to elicit a statement which injected collateral charges against appellant, which charges in no way impaired the effect of the statement given by the witness on direct examination.

Counsel for the government relies on Young v. State, 194 Ind. 345, 141 N. E. 629, 630. There the court says: "While it is true that a party is generally bound by the answer of a witness on cross-examination to a question relating *solely* to a collateral matter, yet it is also true that where a witness has been asked if at another time he made statements which, if true, are contradictory of or render improbable his testimony *on a material matter* and he answers in the negative, he may be contradicted, and this is so although the evidence which it is sought to impeach was brought out on cross-examination. Seller v. Jenkins (1884) 97 Ind. 430; Gibbs v. State (1917) 186 Ind. 197, 115 N. E. 584."

The italicized words of the rule there announced confirm the conclusion here reached. Had Isay made the statement, it in no way contradicted the statement given on direct examination nor tended to render the testimony on the material matter improbable.

Welch v. State, 104 Ind. 347, 3 N. E. 850, 852, is also cited. In that opinion the court said: "The conversation or declarations imputed to him had no relation, except by argument or inference, to the testimony given by the witness in his examination in chief. They were not contradictory of his testimony as given, nor were they inconsistent with it so as to become the subject of an impeachment. 1 Whart. Ev. §§ 558, 559; Seller v. Jenkins, supra."

Nor can the admissibility of this evidence be sustained on the ground that the statement tended to show hostility on the part of Isay toward Schechtel. While the prejudice or hostility of a witness may be brought out on cross-examination, the prejudice or hostility must be directed to the party against whom the evidence relates. Here Isay was impeaching Schechtel. The statement, if proven, would tend to show, not hostility toward Schechtel, but cordiality and friendliness. If anything, it showed hostility toward appellant.

We therefore conclude that this testimony of Isay was not the proper subject of rebuttal, and, having been highly prejudicial, the judgment must be, and is hereby, reversed, and the cause remanded for a new trial.