## NAPOLEON WILLIAMS *v.* THE STATE.

1. CRIMINAL LAW: *Reasonable doubt. Erroneous instruction.*

    It is error to instruct the jury in a trial for murder that an abiding conviction of the guilt of the defendant or full satisfaction of the truth of the charge, is equivalent to belief of his guilt beyond a reasonable doubt.

2. SAME. *Evidence. Cross-examination.. Contradictory testimony.*

    It is error to admit testimony to contradict that of a witness for the opposite party drawn out on cross-examination, unless the testimony sought to be contradicted is of a substantive nature and relevant to the issue, and not merely collateral thereto.

3. SAME.   *Collateral matters.   Test of admissibility.*

> If the testimony of a witness on cross-examination in respect to a matter not brought out on the direct examination is such that it would not be competent if offered by the cross-examiner, the same is collateral, and cannot be contradicted.

4. SAME.   *Case.*

> When a witness for the defendant in a murder trial has denied, on cross-examination, that she said to the wife of the deceased, beside his dead body, on the day of the homicide, in the presence of certain persons named, "I sent you word not to let your husband come down here. They made up a plot to kill him three weeks ago," such testimony being wholly incompetent, it was error to allow the state to introduce the contradictory testimony of one of the persons named as present at the time.

FROM the circuit court of Adams county.

HON. W. P. CASSEDY, Judge.

The appellant was indicted for the murder of one Zion Ross, and convicted of manslaughter. The second instruction given for the state was as follows: "The court instructs the jury that a reasonable doubt, in a legal sense, is a doubt which has some reason for its basis, as defined in these instructions. It does not mean a doubt from a mere caprice, or groundless conjecture. A reasonable doubt is such a doubt that the jury are able to give a reason for; such a doubt as would cause a reasonable, prudent and considerate man, in the graver and more important affairs of life, to pause and hesitate before acting upon the truth of the matter charged or alleged. Therefore, the court instructs you that, in considering this case, you should not go beyond the evidence to hunt for doubts, nor should you entertain such doubts as are merely chimerical, or based upon groundless conjecture. A doubt, to justify an acquittal, must be reasonable, must arise directly out of and from a candid consideration of all the evidence in the case, and then it must be such a doubt as would cause a reasonable, prudent and considerate man to hesitate and pause before acting in the graver or more important affairs of life. You are therefore instructed

further, if, after a careful and impartial consideration of all the evidence in this case, you can say and feel that you have an abiding conviction of the guilt of the defendant, and are fully satisfied of the truth of the charge, then you are satisfied beyond a reasonable doubt, and your verdict should be guilty.'' Defendant excepted to the granting of that charge. The opinion states the case with reference to the other question discussed therein.

*Calhoon & Green,* for the appellant.

1. The state should not have been allowed to contradict, by another witness, the testimony of Margaret Kelly, elicited by the state on cross-examination, denying that she made, after the killing, the unsworn statement as to which she was interrogated. It was not permissible on the idea of contradicting the witness by her own statements. What she said after the killing was wholly immaterial and irrelevant.

2. The second instruction erroneously presents the doctrine of reasonable doubt. To say that the jurors must have that degree of certainty upon which they would act in their own grave and important affairs, is one thing, and to tell them, as here, that they must convict unless they have such doubt as would cause a reasonable man to pause and hesitate before acting in the graver and more important affairs of life, is a very different thing, that finds no sanction in the law. Whose graver and more important affairs, their own or those of other people? And must their certainty be such as only to make them pause and hesitate instead of inducing their action?

3. The action of the court below in allowing the statement of the district attorney as to the penalty of manslaughter, made in his concluding argument, to go unrebuked, although objected to, was highly prejudicial to the accused, when regarded in connection with the evidence and the further statement that the jury might return a verdict of manslaughter under the indictment.

*Wiley N. Nash,* attorney-general, for the state.

1. It does not follow that, because the district attorney stated in his concluding argument the penalty affixed to the crime of manslaughter, it had not been already brought to the attention of the jury in the earlier stages of the case. The record is silent as to this, and both sides may have repeatedly alluded to the different degrees of punishment. Nothing could be less unusual in the history of murder trials. Although no charge on the subject was given, the legal nature of the crime was subject to discussion in all of its phases.

2. The second instruction for the state presents the doctrine of reasonable doubt with a fullness bordering on prolixity. Certainly the defendant was not prejudiced by the view of the law therein stated. Taken in its entirety, it states the rule with the accompaniment of every recognized qualification favorable to the defendant.

Argued orally by *S. S. Calhoon,* for the appellant.

Whitfield, J., delivered the opinion of the court.

The second instruction for the state is erroneous in attempting to define reasonable doubt. We do not think it open to objection on the ground urged, but the concluding part of the charge expressly defines reasonable doubt by telling the jury that "abiding conviction of the guilt" of the defendant, or full satisfaction of his guilt, is the equivalent of belief beyond a reasonable doubt. This is another of the many vain attempts to "compute that which is not number, and measure that which is not space." *Burt* v. *State,* 72 Miss., 408.

Margaret Kelly, a witness for the defendant, testified, detailing all the circumstances of the killing, all of which she plainly saw, as she says. On cross-examination she was asked this question: "On the morning that Zion was killed, at the dead body, in the presence of Elsie Ross, John Jeems and Lutie Higdon, did you not say to Elsie Ross, 'I sent you word

not to let your husband come down here.   They made up a
plot to kill him three weeks ago?' '' She answered that she
did not so state.   The state, in rebuttal of this, proved, by
John Jeems, that she did make that statement to Elsie Ross.
The defendant objected to both the question to Margaret Kelly
and the question to John Jeems, and, the objections being over-
ruled, duly excepted.

It is competent to discredit a witness by showing that he has
'' made statements out of court contrary to what he has testi-
fied on the trial.   But it is only in such matters as are relevant
to the issue that the witness can be contradicted.''   1 Green.
Ev. (15th ed.), vol. 1, § 462.   It is true that, on cross-exami-
nation, great latitude is allowed, and that a witness may be
asked by the cross-examining party as to collateral matters, as
to which he could not be examined in chief, but the cross-ex-
amining party in such case is bound by the answers, and can-
not contradict them.   It is also true that, as stated by Mr.
Wharton, cited in *Seller* v. *Jenkins*, 97 Ind., 437, '' it is not
necessary, in order to introduce such contradictory evidence,
that it should contradict statements made by the witness in his
examination in chief.   '' Ordinarily,'' says Mr. Wharton, '' the
process is to ask the witness, on cross-examination, whether, on
a former occasion, he did not make a statement conflicting with
that made by him on his examination in chief.   But the con-
flict may take place as to matters originating in the cross-ex-
amination, and then, if such matters are material, contradiction
by this process is equally permissible.''   But confusion must
be avoided here, and the precise rule is this: Whilst the un-
sworn statement out of court may be used to contradict the
sworn statement in court, whether the statement sought to be
contradicted is made by the witness on his direct examination
or on his cross-examination, in either case the statement in
court must be one embodying a fact substantive in its nature
and relevant to the issue made in the case.   And if such em-
bodied fact be one not in its nature substantive and so relevant

to such issue, and therefore one which the cross-examining party could prove as a part of his case, then the unsworn statement out of court cannot be used to contradict the statement in court, though the cross-examining party may ask as to such unsworn statement, being bound by the answer. It is further true, as held in *Seeler* v. *Jenkins, supra,* that "the degree of contradiction does not determine the competency of the impeaching testimony, however much that consideration may affect its potency." 1 Thompson on Trials, § 494.

The question recurs, then, what matters are collateral within this rule? The supreme court of Pennsylvania, in *Hildeburn* v. *Curran,* 65 Penn. St., 63, through Sharswood, J., said: " The test of whether a fact inquired of in cross-examination is collateral, is this, would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea ? " In that case the plaintiff sued to recover for services as a salesman. "One of the questions involved was the period of time the plaintiff had been in the service of the defendants. He had been absent abroad and returned. The witness had been asked in cross-examination, whether he had not said to Mr. Duburg that he had received a letter stating that Mr. Curran, the plaintiff, was not coming back," and answered that he had not, and defendants then offered Mr. Duburg to contradict this statement. *Held,* it could not be done.

In *Drake* v. *State,* 29 Texas (Court of Appeals Reports), 269 *et seq.,* a trial for murder, James Drake, Jr., a witness for the defendant, was asked, on cross-examination, the following question: "On the evening or night of August 27, 1887, the day Guinn was shot by your father, at or near the store of Charles Post, on Austin street, in the city of Waco, Texas, and in the presence of Hugo Robinson, Street Bacon, Bob Fleming and Todd Zigler, did you not say that you knew your father was going to kill Guinn, before you left your father's house that morning ? " The witness denied making the statement. Over the objection of defendant, the state was permit-

ted to prove, by the four witnesses named, that he did make it, and, although the court "plainly and emphatically instructed the jury that it went only to the credibility of Drake, Jr., and could not be considered for any other purpose," the court, in an exhaustive opinion of unusual clearness and force of reasoning, addressed, too, to this precise point, held the contradicting testimony of the four witnesses incompetent. In holding the admission of this testimony reversible error, notwithstanding the instructions referred to, the court said: "While it is true that this statement was not criminating evidence against the defendant, and the jury were so instructed by the court, its probable effect upon the minds of the jury was to not only discredit the testimony of the witness, Drake, Jr., whose testimony was very material to the defendant, but also to prejudice and influence the minds of the jury upon the main issue. It is not probable that the jury, in the consideration of the main issue, did or could divest their minds of the statement proved by four witnesses to have been made by the witness, Drake, Jr. If the jury believed that he made such statement, would it be natural for them to obey the instruction of the court and restrict their consideration of it to the impeachment of the witness? They might endeavor to do so, and believe they were doing so, and still be involuntarily and unconsciously influenced thereby." These words apply with tremendous force in this case, where no cautionary instruction was given.

In *Combs* v. *Winchester*, 39 N. H., 13 (a very clearly-reasoned opinion), plaintiff sued in case for damages sustained by reason of an alleged defect in the highway. The defense was that the plaintiff did not use ordinary care "in this, that a nut was off from the bolt of his carriage, and this occasioned the accident, and that the plaintiff knew the nut was off before the accident." A witness for plaintiff was asked, on cross-examination, "if he had not said that he knew the bolt had no nut on it and that the plaintiff would get his neck broke, and answered in the negative." The defendant thus offered to prove that

the witness had so stated, but it was excluded. The court say: "In the present case [as in the case at bar] the question had no relation to any supposed bias or prejudice of the witness, or any friendship or hostility to either of the parties. The question here is, whether the testimony of the witness that he had not said that he knew the bolt had no nut on it, was material and relevant to the issue or was a matter merely collateral. The fact that there was no nut on the bolt was relevant and material. If the witness had stated, as a fact, he knew that there was no nut upon the bolt, it would have been competent to impeach him by showing that he had said elsewhere that there was a nut on the bolt, or that he did not know whether there was or not. Such a statement might be proved by cross-examination of the witness or by the testimony of others. It may always, we think, be determined whether evidence in contradiction of a witness is admissible by considering whether the question, the answer to which is proposed to be contradicted, would be admissible if proposed by the party calling him. Such a party has, of course, the right to propose to his own witness any question which is relevant and material to the issue, and all evidence which is so relevant and material may be impeached by showing that the witness has, at another time, given a substantially different and contradictory account of the same transaction. But if the question is admissible only on cross-examination, it is merely collateral, and cannot be contradicted. If the witness is asked to state what he has heretofore said upon any subject of inquiry, it would be open to objection as immaterial and irrelevant, and might be properly rejected. The proper question is, what do you now state under oath? What any person has stated, at some other time, when not under oath, is not competent to be received as evidence, whether it is sworn to by a third person or by himself. In either form it is, in effect, but hearsay. . . . The question here is, what evidence is, in this view, to be deemed merely collateral, irrelevant or immaterial.

In the case of *Attorney-general* v. *Hitchcock*, 1 Exch. (W. H. & G.), 91, it was contended, on the authority of Starkie on Evidence, that the rule excluding evidence in contradiction of the witness' statements as to collateral or irrelevant matters, does not exclude the contradiction of the witness as to any facts immediately connected with the subject of the inquiry. And Pollock, C. B., in delivering his opinion, said: "I think the expression as to any matters connected with the subject, is far too vague and loose to be the foundation of any judicial decision. I am not prepared to adopt the propositions in those general terms— that a witness may be contradicted as to anything he denies having said, provided it be in any way connected with the subject before the jury. It must be connected with the issue as a matter capable of being distinctly given in evidence, or it must be so far connected with it as to be a matter which, if answered in a particular way, would contradict the witness' testimony, and, if it be neither of these, it is collateral to, though in some sense it may be considered connected with, the subject of inquiry. The test whether the matter is collateral or not is this: If the answer of the witness is a matter which you would be allowed, on your part, to prove in evidence—if it had such a connection with the issue that you would be allowed to give it in evidence—then it is a matter on which you may contradict him."

In *Com.* v. *Hourigan*, 89 Ky., 311, 312, on a trial for murder, a witness was introduced by the State, who testified, in chief, to the circumstances of the killing as he saw them. "Upon cross-examination he was made to say that he did not, at any time, say that he had heard the deceased say he was going to put on a false face and go to Tom Howrigan's, the defendant, and beat him nearly to death, if he did not kill him." Subsequently the defendant was allowed to prove, by a party, that the witness did make such statements. Held, error, the court remarking: "The statement was not competent as substantive testimony. It was *res inter alios*. The credit

of a witness may, of course, be impeached by proof that he has made statements out of court contrary to those made in court, and considerable latitude is allowed in this direction; but, if they relate to a collateral fact not relevant to the issue, this cannot be done. The · question is whether the matter is altogether irrelevant. Clearly, what the witness may have said to the third party was so in this instance. The witness made no voluntary statement as to it, nor did the main examination relate to it in the least [which is true in the case at bar]. He was asked as to it for the sole purpose of contradiction, and a witness cannot be cross-examined as to a distinct collateral matter for such a purpose."

In *Law* v. *Fairfield*, 46 Vt., 431 (an action for damages for being thrown out of a vehicle and injured), there was an effort to show that Carey was driving by showing by a witness that he had admitted he was driving. The court held the evidence of the admission incompetent of course to prove the substantive fact that he was driving, but also held, by clear inplication, that unless, in his testimony, Carey had denied the fact that he was driving, it was not competent to contradict him by showing his statement, out of court, that he was driving. To the same effect are *Washington* v. *State*, 63 Alabama, 192; *Welch* v. *State*, 104 Ind., 351, 352; *Shurtleff* v. *Parker*, 130 Mass., 297; Chamberlain's Best on Evidence, 602, 603, where the authorities are very discriminatingly collected; 1 Thompson on Trials, § 492; 29 Am. & Eng. Enc. L., 794, where the editors say: "The test as to whether a matter is collateral within the meaning of the rule, is this: That the cross-examining party be allowed to prove it in support of his case." And they add to Sharswood's and Pollock's test—thus stated by them —this explanatory comment: "It must be remembered, also, that this test applies to the subject-matter of the inquiry, and not to the admissibility of the evidence offered in proof of it." We approve this as a sound test. Applying it here, we think it is clear that it was error to permit the witness, Jeems, to tes-

tify to the alleged contradictory statement made out of court. Could the State, as a part of its case, have proved that Margaret Keely said to Elsie Ross, "I sent you word there was a plot to kill your husband made three weeks ago" by defendant and his brother? Clearly not. It was competent to prove there was a plot. It was competent to prove it by the acts or declarations of the defendant. It was competent to have proven that Margaret Keely heard the defendant's declarations evidencing the plot. And, had she been asked as to these matters, and denied, she could have been impeached by showing she had elsewhere stated that she did hear the defendant make such declarations. But to permit her to be contradicted by a statement that she had said to Elsie Ross that she had sent her word that there was a plot, etc., is, in no possible view, proper. The exact test here is, what was the fact embodied in her unsworn statement? This, that she had sent Elsie Ross word that there was a plot, etc.; had said to her that there was a plot, etc. Was this fact—her mere statement to Elsie that there was a plot, etc.—a substantive fact relevant to the guilt or innocence of this defendant, which the state could have proved as a part of its case in chief? Most certainly not. It is, in effect, but hearsay, and should not have been allowed.to be contradicted. Whether she made such statement or not is a matter clearly irrelevant and collateral within the test we have laid down, and hence she could not be contradicted as to it. In *Madden* v. *State*, 65 Miss., 178, and *Jones* v. *State*, 67 Miss., 115, the decisions support the views here announced, as does also *Jamison* v. *I. C. R. R.*, 63 Miss., 33, this last case also holding, according to the well-settled rule, that if the fact be material to the issue, whether the witness deny that he made an unsworn statement contradicting the fact or not, the unsworn statement may be proved. The testimony as to Alf Smith's difficulty seems part of the *res gestæ*.

*For the errors indicated, the judgment is reversed and the cause remanded.*