# THOMPSON-STARRETT COMPANY *v.* WARREN.*

DAMAGES; MASTER AND SERVANT; IMPEACHMENT OF WITNESSES; TRIAL;
INSTRUCTIONS TO JURY.

1. In an action to recover damages for personal injuries resulting from a
fall from a scaffold causing a hernia to be developed in the plain-
tiff, it is not error to permit a physician called as a witness for the
plaintiff to testify to the nervous condition of the plaintiff result-
ing from the injury, as in assessing damages for pain and suffering,
mental and physical weakness, and the probable permanent contin-
uation of the plaintiff's incapacity to labor, as the direct consequence
of the physical injuries received, the jury is entitled to weigh all
of the evidence relating thereto.    (Distinguishing *Washington & G.
R. Co.* v. *Dashiell,* 7 App. D. C. 507.)

2. Where in an action by a servant against his master to recover damages
for injuries received from falling from a defective and unsafe scaf-
fold provided for his use, a witness for the defendant, after testify-
ing that the scaffold was sound and safe, denied on cross-examination
that, shortly after the accident, another servant of the defendant had
asked him, "What in hell did you use that old rotten trestle for?"
and also denied that he, the witness, had replied that it was the only
one he had to use,—it is competent for the plaintiff to prove in re-
buttal that the question was asked and that the witness so replied to
it.

3. The granting of special instructions·asked by the plaintiff in a personal
injury action was *held* not to be error where, assuming they were too
broad, all possible misunderstanding of them by the jury was ob-
viated by a special instruction granted at the request of the de-
fendant and by the charge to the jury.

4. The refusal to grant a special instruction to the jury, which was an
elaboration of the matter contained in instructions granted, and the
substance of which was contained in the charge to the jury, was
*held* not to be erroneous.

5. In a personal injury action, a special instruction on the subject of dam-
ages, asked by the defendant, is properly refused, which tells the
jury that it was negligence on the part of the plaintiff not to follow
the advice of his surgeon in respect to submitting to an operation;

---

*Master and Servant.*—Upon the question of the duty of master to furnish
safe appliances as affected by fact that·defective appliances are prepared
by fellow servants, see note to *Haskell* v. *Cape Ann Anchor Works,* 4
L.R.A.(N.S.) 220.

especially where granted instructions left it to the jury to determine whether the plaintiff was wanting in reasonable care is not following the advice of his surgeon, and the charge to the jury contained a clear, full, and accurate statement of the law upon the subject. (Citing *American Realty Co.* v. *Thomkins,* 37 App. D. C. 87.)

6. It is the duty of an employer to provide reasonably safe structures and appliances for the use of his employee in carrying on the labor in which the employee is engaged; and this duty can not be avoided by intrusting its performance to some other employee; but notwithstanding this duty there is no guaranty on the part of the employer that such a structure is absolutely safe.

7. When an injury is received by an employee as the result of a defective structure furnished for his use by his employer, the fact of the accident carries with it no presumption of neglect of duty on the part of the employer; and the burden rests upon the employee to show such negligence as an affirmative fact. It is not sufficient to show that the employer may have been guilty of negligence, but the evidence must point to the fact that he was. (Following *Butler* v. *Frazee,* 25 App. D. C. 392.)

No. 2344.   Submitted January 11, 1912.   Decided February 5, 1912.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Plaintiff, Edward Warren, an employee of the Thompson-Starrett Company, brought this action against the latter to recover damages for personal injuries sustained through defendant's negligence in failing to provide him a safe place to work.

Plaintiff's evidence tended to show:   That he was employed by defendant as a bricklayer in the construction of buildings for a naval hospital in the city of Washington.   That he worked for two days upon a scaffold erected by the defendant for the purpose.   The scaffold was 5 or 6 feet from the ground, and completed before plaintiff went to work on it.   It consisted of square trestles, or horses set on the ground and covered

with plank. The ground inclined and part of it had been filled in with soft earth. The trestles were about 4 feet apart. Where they extended over the sloping part of the ground, either brick or thick pieces of lumber were put under them to keep them up to the level and to hold them in the soft earth. The lumber and bricks rested upon the earth. Plaintiff had worked two days without accident. It rained the night before the accident, September 17, 1909. At the time of the accident there were several wheelbarrow loads of brick and mortar on the scaffold. Plaintiff and his helper had put down a mortar box and a plank on some brick, on top of the scaffold floor, to get about a foot higher to lay brick. Plaintiff stepped down to get a brick, and the scaffold fell. Plaintiff had nothing to do with the construction of the scaffold. Frank James, whose business it was, constructed it. He was the scaffold builder. Dougherty was boss; Menwell, boss bricklayer; and Somers, general superintendent. Dougherty, since deceased, was around every now and then. There was very much more weight on the scaffold the day before; about ten times as much. One of the trestles broke. It was an old one, the only old one apparently; it disappeared the night of the accident, and has not been seen since. The trestle, examined immediately after the accident, showed that one of the supporting boards had broken squarely in two. A sponge-like substance covered a space of about 18 inches on the outside of the board. It broke right across that part. A piece readily twisted off at the broken edge,—was "like a sponge with the life soaked out of it." The weak place in the board was caused by what was called "dry rot." This was the only old trestle, and stood where the ground had been filled. Plaintiff sustained a blow on the back of the head in falling and a bruise in the groin, resulting in a severe case of hernia. Could get no relief by the use of an ordinary truss; was cared for by three competent surgeons, who thought his injuries permanent; might be relieved by an operation, but it was not entirely safe to operate. The matter was suggested to plaintiff, but he declined because there was no sufficient assurance of success, and his wife was af-

flicted. Plaintiff did not see the scaffold constructed, and did not examine it before going to work upon it. That the defect in the board could be readily seen by anyone examining it. Defendant's evidence tended to contradict the evidence on behalf of the plaintiff, in respect of the softness of the earth at the place where the trestle broke, and to show that the defect in the board, if any, was latent, and could not have been discovered by an ordinary inspection.

The jury returned a verdict for the plaintiff, and the appeal is from the judgment thereon.

*Mr. Paul Sleman, Mr. Harry F. Lerch,* and *Mr. W. L. Clark* for the appellant.

*Mr. E. N. Hopewell* and *Mr. L. J. Mather* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error is on an exception taken to permitting one of the medical witnesses to testify regarding the injury to the plaintiff's nervous system. The witness, after describing the appearance and condition of the plaintiff, including the hernia and the condition of his bowels and the hemorrhages therefrom, proceeded to say that he was in a highly nervous state, and completely unstrung. Defendant objected to any evidence of nervous condition existing as a result of the accident. Witness was then permitted to say that plaintiff was tremulous; easily moved to tears; could not concentrate his thoughts; could not touch his fingers in front with his eyes shut; had vertigo and pain in the back of his head; cannot sleep; is forgetful; has lost weight; cannot bend over to work; cannot go on a scaffold, or to any height, would fall off. That these were results of his injuries. Cross-examined by defendant, he said that the shock to the nervous system was caused by the fall. His brain was affected to a

certain extent, and probably his spinal column was jarred. The nervous condition is the direct result of the fall. Another medical witness testified, without objection, to the nervous condition, and that it was the result of the injuries received at the fall. A motion was afterwards made to strike out the evidence of the first witness, but denied, and defendant again excepted. Counsel rely upon the case of *Washington & G. R. Co.* v. *Dashiell,* 7 App. D. C. 507, in support of their contention. In that case no exception was taken to the evidence of nervous disorders resulting from physical injuries. The question arose on an exception taken to the charge of the court. As stated in the opinion (p. 514): "The jury were instructed that, in addition to damages for pain and suffering, they could award damages for any impairment of the plaintiff's nervous system, if such nervous impairment was produced as a direct result of the nervous shock received by her on the occasion of the collision: thus making the nervous shock and the consequences thereof a separate and independent ground for awarding damages." On this ground the judgment was reversed. We are of the opinion that no error was committed. In assessing damages for pain and suffering, mental and physical weakness, and the probable permanent continuation of plaintiff's incapacity to labor, as the direct consequence of physical injuries received, the jury were entitled to hear and weigh all of the evidence relating thereto. This is quite different from charging them to assess damages for impairment of the nervous system as a result of the nervous shock, in addition to the damages for pain and suffering and permanent incapacity. The learned trial justice was careful to avoid any such error in his charge defining the measure of damages, and no exception was taken to the charge on that point.

2. Another exception, on which error has been assigned, was taken to the introduction of evidence. This occurred in the cross-examination of Frank James, the scaffold builder, who was a witness for the defendant. This witness described the trestles, and said they were on solid ground, with nothing

under them. That the scaffold was properly built; examined the trestles as he put them up; saw nothing wrong with them; saw no dry rot; have to look closely at them when you pick them up and carry them around, and you could easily see if dry rot showed on the outside. That he has seen "dry rot" in boards, but saw none in these. Saw the broken trestle, but saw no dry rot in it. That he was around every morning and looked the scaffolds over, and saw nothing wrong. With the express purpose of laying a foundation for the impeachment of the witness, counsel for the plaintiff asked the witness if he was not sent for by Dougherty to come to the scaffold after it had fallen, and said, Yes." He testified that Dougherty said to him: "Go and look at that scaffold there," and went away. He was then asked if Dougherty did not, in the presence of Warren and Smith, say to him: "Frank, what in hell did you use that old rotten trestle for?"—and, further, if he (witness) did not reply that it was the only one he had to use. He replied, "No," to each question. This was objected to and exception reserved. Plaintiff was later permitted, over objection of defendant, to prove by two persons that they were present and heard Dougherty ask the question, and witness make the reply, which he had denied.

The rule for determining whether a fact inquired of in cross-examination is collateral is stated by the supreme court of Pennsylvania as follows: "The rule is well settled that if a witness is cross-examined to a fact purely collateral and irrelevant to the issue, and answers it without objection, he cannot be contradicted. The reason is obvious. The investigation might thus branch out into any number of immaterial issues upon the mere question of the credibility of a witness. * * * The test of whether a fact inquired of in cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?" [*Hildeburn* v. *Curran*, 65 Pa. 63.] The rule established by the weight of authority is that the statement must be material, in effect involve an assertion inconsistent with one made on the stand, and relevant; that is to say, a fact that the

cross-examining party would be entitled to prove as part of his case. 1 Greenl. Ev. 16th ed. secs. 461e et seq.; *Williams v. State,* 73 Miss. 820–825, 19 So. 826. Nor is it necessary that the statement or declaration, offered to be proved, shall have been made by the witness himself, and of his own motion. It is sufficient if made by another to him, and assented to, or acquiesced in in such manner as to make it, in effect, his own declaration. *Kirby* v. *State,* 89 Ala. 63–71, 8 So. 110; *State* v. *McGaffin,* 36 Kan. 315–321, 13 Pac. 560.

The material issue in the case was whether defendant's employee, charged with the duty of erecting the scaffold, had negligently used a defective trestle in its construction. Plaintiff had introduced evidence tending to prove the fact. The witness, James, had been called to rebut the plaintiff's evidence, and had testified that care had been exercised by him in erecting the trestles, and that they were sound and safe. Had he made a voluntary statement that he had used a rotten trestle, he undoubtedly could be cross-examined concerning it. Such a statement would be inconsistent with his statement in evidence, and he could be cross-examined in regard to it. If admitted, he would discredit himself: if denied, witnesses could be called to discredit him. His reply to Dougherty, if made, that he had no other than a rotten trestle to use, was inconsistent with his statement made as a witness.

Tested by the rules above stated, we think there was no error in overruling the objections.

3. The various assignments of error founded on exceptions to instructions given and refused will be considered together.

The first two instructions given at request of plaintiff were to the effect that it was the duty of the defendant to provide a reasonably safe place for the plaintiff to perform his services, and if the scaffold was dangerous and unsafe, of which plaintiff had no knowledge, and could not have acquired knowledge by the exercise of ordinary care, and that as a result of the defendant's failure to provide a safe scaffold, the same fell and injured plaintiff, he would be entitled to a verdict; and that the mere fact of the falling of the scaffold does not prove

negligence, nevertheless the fact that it fell may be taken into consideration with all the other facts and circumstances in determining whether defendant was guilty of negligence that caused the plaintiff's injuries. Assuming, for the purposes of the argument, that these instructions were too broad, all possible misunderstanding of them was obviated by the special instructions given at the request of the defendant, and by the general charge. Defendant's special instructions 2 and 3 (given) were to the effect that if the defendant had caused a scaffold to be constructed that was reasonably safe for the purposes for which it .was intended, and that plaintiff made, or directed changes in the same which rendered it unsafe, the defendant would be entitled to a verdict.

Special instruction 4, that was refused, was an elaboration of the matter contained in 2 and 3; and moreover, its substance was contained in the general charge. Refused instruction 5, relating to the burden of proof, was substantially given in the general charge. Instruction 6, given at request of defendant, was to the effect that it was incumbent upon plaintiff to prove not only that the timber was in fact defective, but that defendant was negligent in not discovering the defect,—"the rule being that defendant is not responsible for injuries resulting from latent defects in the material used in the construction of the scaffold, of which he has no knowledge or means of knowledge. The word 'negligent' in the foregoing instruction is defined as the failure of defendant to exercise such care in inspecting said timber as an ordinary man under like circumstances would have exercised."

Defendant's special instruction 7 and 8, that were given, related to the discovery of latent defects, and the care required of the defendant, and informed the jury that it was not required to employ unusual or extraordinary tests. Special instruction 10 charged the jury that no duty was devolved upon defendant to furnish a pole scaffold, or one of different design. Special instruction 12 was rightly refused because it instructed the jury in relation to damages, substantially, that it was negligence on the part of plaintiff not to follow the

advice of his surgeon in respect to submission to an operation. Instructions 13 and 14, which left it to the jury to determine whether the plaintiff was wanting in reasonable care in not following the advice of his surgeon, were given by the court. Moreover, the general charge contained a clear and full statement of the question to the jury, in entire accordance with the rule relating thereto, as declared in *American Realty Co.* v. *Thomkins,* 37 App. D. C. 87–93.

The rule of law is well settled that it is the duty of an employer to provide reasonably safe structures and appliances for the use of his employee in carrying on the labor in which he is engaged; and this duty cannot be avoided by intrusting its performance to some other employee. That notwithstanding this duty, there is no guaranty that the structure is absolutely safe. That when an injury is received in such employment, the fact of accident carries with it no presumption of neglect of duty on the part of the employer; and the burden rests upon the employee to show such negligence as an affirmative fact; it is not sufficient to show that the employer may have been guilty of negligence,—the evidence must point to the fact that he was. *Butler* v. *Frazee,* 25 App. D. C. 392–401, and cases there cited.

The general charge embodied these propositions in a clear and lucid manner, and also charged the jury that ordinary care only was required of the employer; and that the plaintiff could not recover, if he knew, or might, by the exercise of ordinary care, have known that the trestle was defective, or if the fall of the scaffold was caused by his own act in erecting the mortar-box platform on the same.

The charge contained a correct, clear, and fair statement of the law, and of the issues to be determined by the jury; and omits nothing that the defendant was entitled to.

Perceiving no error in the proceedings, we must affirm the judgment, with costs.                    *Affirmed.*