BUTLER *v.* STATE.

(Division A. Oct. 25, 1937.)

[176 So. 589. No. 32783.]

Orma R. Smith, of Corinth, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney General, for the state.

Argued orally by **Orma R. Smith**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Smith, C. J.**, delivered the opinion of the court.

The appellant has been three times convicted on an indictment charging him with murder, and this is the third appearance of the case in this court. 163 So. 390; 177 Miss. 91, 170 So. 148. The conviction here appealed from is for manslaughter.

The appellant's complaints are: (1) The evidence is insufficient to support the verdict; (2) the court wrongfully admitted testimony to be hereinafter set forth.

The first of these contentions may be summarily disposed of; for, leaving on one side the fact that three juries have said that the evidence supports a conviction, the evidence in this record clearly presents a question for the determination of the jury.

The appellant claims to have killed the deceased in order to defend himself from a deadly attack being then

made on him by the deceased. The evidence as to who was the aggressor in the difficulty, and as to the appellant's claimed right of self-defense, is in sharp conflict. The appellant, when testifying, said that, "Back some quite a bit (evidently several days) before we got into it" (the difficulty in which the deceased was killed), the deceased, without provocation, slapped him and threatened to kill him, and made a similar threat a short time thereafter.

In his cross-examination the following questions and answers appear:

"Q. Isn't it a fact that the day before this happened (the killing of the deceased) you went up to get Bynum Burns (the deceased) at his own house to cut your hair? A. I did not.

"Q. And didn't you meet Ernest Barnes at the Dixon Creek Bridge a hundred fifty or two hundred yards from his house and tell him you were going to get Bynum (the deceased) to cut your hair? A. No, sir.

"Q. And didn't Ernest tell you he didn't think Bynum was at home, he thought he had gone to Mr. Wooten's with a load of corn? A. He didn't tell me anything about Bynum, I didn't ask him.

"Q. Did you meet him there at the Dixon bridge? A. No, sir.

"Q. Did you go to Bynum's house? A. No, sir.

"Q. Then you didn't meet Ernest at the bridge? A. I could have been at the bridge but didn't go to Bynum's house.

"Q. And didn't you go to Bynum's house and when you found there wasn't anybody there turn and walk away? A. I didn't go to Bynum Burns' house."

The State was permitted in rebuttal, over the appellant's objection, to introduce evidence that the appellant did tell Barnes at the Dixon creek bridge that he was going to get the deceased to cut his hair, and that he then went to the home of the deceased and knocked on the steps thereat, but no one answered. The appel-

lant says that whether he made the statement to Barnes and thereafter went to the home of the deceased were collateral and immaterial matters, and that the State was bound by his denial thereof and should not have been permitted to contradict his testimony relative thereto.

The test as to whether the matter here inquired of on the cross-examination of the appellant is collateral within the rule prohibiting contradiction thereof is whether the State would have been permitted to prove it as a part of its case. If it would have been so permitted, the evidence was competent. Williams v. State, 73 Miss. 820, 19 So. 826. The evidence being in conflict as to who was here the aggressor, the state of mind of the appellant and of the deceased toward the other "was a material inquiry, and any evidence pertaining thereto was relevant," and is admissible unless incompetent on some other ground. Clark v. State, 123 Miss. 147, 85 So. 188, 190. The evidence of threats made by the deceased against the appellant was admissible to show the state of mind of the deceased toward the appellant, and also to reinforce the appellant's claim that when he killed the deceased he believed that the deceased was then about to kill him.

If the appellant said and did the things here under consideration, the fact that he so said and did would tend to contradict his testimony as to the threats which he says were made by the deceased; for it is hardly probable that he would have so said and done had these threats been, in fact, made. In addition, they tend to negative any belief on his part that the deceased made the threats, if he in fact did make them, with any intention of carrying them out, and, if the jury so believed, would negative his claim to have interpreted the acts of the deceased at the time he was killed, in the light of a previously formed intention by the de-

ceased to kill him, the appellant.  Jamison v. Illinois C. Railroad Co., 63 Miss. 33.

Affirmed.

**McGehee, J.,** did not participate in the decision of this case.