JONES *v.* STATE.

(Division B.   Nov. 15, 1937.)

[177 So. 35.   No. 32716.]

A. B. McCraw, James M. Mars, and Clayton Lewis, all of Philadelphia, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Taylor Jones, was jointly indicted with Richard Watkins and Tom White for grand larceny in connection with the loss of a white hog alleged to be valued at $35. The indictment was returned and filed on the 2nd day of February, 1937, in the circuit court of Neshoba county, Miss. On the 8th day of February the appellant, Taylor Jones, applied for a continuance because of the absence of his wife, who was alleged to be sick; this motion was overruled, and on the trial the wife appeared and testified. On the 10th day of February appellant again applied for a continuance, because of the absence of the witness P. G. Blanks, in which motion he recited

that on the 8th day of February, 1937, when the case was called, he first learned that P. G. Blanks was a material witness, and that a subpoena was required for the said P. G. Blanks, and that a special request was made that the subpoena be carried by the sheriff of Neshoba county to Meridian, where the witness Blanks lived, and personally served on him; that the summons was served on the wife of P. G. Blanks in the absence of the latter. That he expected to prove by the said witness that the hog identified by the prosecuting witness, Chap Duncan, was raised on Blank's farm, and sold by Blanks to Tom White —that the hog so identified was not the one averred to have been stolen. That these facts cannot be proven by any other witness; that the defendant has used due diligence to obtain the presence of said witness, and that this motion was not made for the purpose of causing delay, but for the reason that address of said P. G. Blanks was Meridian, Miss., and the defendant believed his presence could be procured later in the term, or at least at the next term of said court, he being within the jurisdiction of the court. This motion for a continuance was overruled, and the case put to trial. The state introduced an affidavit and search warrant for the search of the premises of the defendant, the affidavit reciting that on or about the 16th day of December, 1936, in the county of Neshoba, a white barrow hog weighing about three hundred pounds on foot, valued at $40, the property of affiant, was taken and carried away, "and affiant suspects Taylor Jones as the person guilty of said crime, and that the said articles, or some of them, are now concealed in or about the dwelling house, or outhouses connected therewith, of the said Taylor Jones in said county; and affiant prays a search warrant to search said premises, and seize the said goods if found, and also the body of Taylor Jones, to be disposed of according to law," etc. The search warrant followed the affidavit in its language.

A search warrant was issued and served upon the wife of Taylor Jones, and the premises were searched; but

neither the hog nor the meat thereof was found, although in a place near the residence they discovered some blood and hair and hog tracks, and also the tracks of an automobile near same. The witness Chap Duncan testified that he missed his hog, described in the affidavit, and in searching for it went upon the premises of the defendant, and himself saw the blood and hair and tracks; that he thereupon went to an officer and made the affidavit mentioned, and in company with two officers returned to the premises, when the warrant was served upon the wife, and the premises searched as above stated. This testimony was objected to, the objection overruled, and the affidavit and search warrant were admitted in evidence. The officers who served the search warrant each testified, over objection, as to what they found on the premises in said search. It appears that in continuing the effort to locate the hog or the carcass, the owner of the hog alleged to be missing went to Meridian, Miss., secured the aid of city detectives, and found a dressed hog in the cold storage plant operated by one Betsebee, which they claimed to have identified by a scar or mark on one of the hind legs, alleged to have been made by the owner, Duncan, in castrating the hog. The hog was dressed but had some white hairs in the ears and around the hoofs. The animal alleged to have been stolen was white. This hog also corresponded in size to the one alleged to have been stolen. When the officers appeared, Betsebee told them that the hog was stored by Tom White, the defendant jointly indicted with Taylor Jones and Richard Watkins.

There was a severance, and the defendants were separately tried. Tom White, jointly indicted with the defendant, testified that he bought the hog from Blanks, who lived in the city of Meridian, but owned and operated a farm in Alabama on which he stayed most of the time, usually spending the week-ends in Meridian, at home. There was evidence for the state by other witnesses that Richard Watkins and Taylor Jones were in

Meridian and offered a hog for sale to parties there, on the day following the disappearance of the hog in question, which was missed on the 16th day of December; the said defendants being in Meridian on the 17th. There was further testimony by other parties, who saw the defendants Richard Watkins and Taylor Jones in an automobile owned by the latter, the ''turtle back'' of which was off or missing, that such a vehicle was seen in Meridian about the 17th, when the defendants were trying to sell a hog.

On the trial of the case the state sought to prove by Chap Duncan that Richard Watkins, the joint defendant, but who was not tried with the appellant, had approached him subsequent to the search with a proposition to pay for the hog. The court refused to permit Chap Duncan to testify to this matter, but the state sought to prove by Duncan, the prosecuting witness, such a statement.

The witness Betsebee testified that Tom White stored the hog claimed to be the missing animal in his cold storage plant, and the former testified that he stored a hog there, but that it was one he had bought from Blanks; and both witnesses stated that the hog in question claimed to be the stolen animal, was stored in Betsebee's cold storage plant on the 22d day of December.

The appellant was convicted of petit larceny, and sentenced to a term of six months in jail, and payment of costs, from which judgment this appeal is prosecuted.

In the light of all the facts in this record, we are of the opinion that the court should have granted the continuance, either to a later day in that term, or to a later term, in order that the witness Blanks, whose testimony was material in proving the truth of Tom White's statement as to the purchase of the hog, might be procured. It is true that White testified that he bought the hog from Blanks, but White was indicted for larceny, with the appellant and Watkins, and Blanks' testimony would have been very important in determining whether White, in

fact, bought the hog from Blanks, and whether Blanks raised the hog on his farm in Alabama. It clearly appears that the appellant's witness resided in Meridian, and spent his week-ends in that city, and process would probably have secured his appearance, had the case been continued to a later day, or to a subsequent term. The application shows—and it is not disputed—that the defendant only learned of such witness and such testimony, on the 8th of February, two days before he was put to trial, and that the summons then procured had not been served personally upon the witness, but had been left at his residence with his wife.

However, we think that the affidavit in this case was void because based on a mere suspicion. The statute setting forth the affidavit to obtain a search warrant, and the form of search warrant for stolen goods or property, is section 1357, Code of 1930, which reads as follows: "Before me, Andrew Sims, a justice of the peace of said county, Edward Nolly makes oath that, on or a-bout the——day of——, 1906, in the said county, a box of candles and a case of brogan shoes, the property of affiant, of the value of one hundred dollars were feloniously stolen, taken, or carried away; and affiant suspects Samuel Miller as the person guilty of said crime, and has reason to believe and does believe that the said stolen articles, or some of them, are now concealed in or about the dwelling house, or outhouses connected therewith, of the said Samuel Miller, in said county; and affiant prays a search warrant to search said premises, and seize the said goods if found, and also the body of said Samuel Miller, to be disposed of according to law.

"Edward Nolly

"Sworn to and subscribed before me, the——day of ——."

It will be seen from the affidavit above set out that the words, "and has reason to believe and does believe," are omitted from the affidavit for search in this case. These words are the very gist of the probable cause re-

quired for the search of a person's premises for stolen goods or property; mere suspicion, however strong, will not be sufficient; there must be the allegation both that he has reason to believe, and that he does believe, that such stolen articles are concealed on the premises, etc. That he has reason to believe, and does believe, is the thing that constitutes probable cause, required by section 23 of the Constitution of 1890. The information upon which he has reason to believe, and does believe must be such as would lead a reasonably prudent person to believe facts, which facts, if established, would be sufficient to amount to a probability, and testified to by a witness before the justice of the peace issuing the warrant.

The warrant was therefore void, and admitting it in evidence, and the evidence of the officers acting under it, constitute reversible error. See State v. Watson, 133 Miss. 796, 98 So. 241; Turner v. State, 133 Miss. 738, 98 So. 240, and Len Bouchillon v. State (Miss.), 177 So. 34, decided November 1, 1937.

We are of the opinion that it was error to permit the witness Richard Watkins to be impeached as regards the statement by him to Chap Duncan, the owner of the hog alleged to have been stolen, seeking to compromise the matter and pay for the hog. This statement was subsequent to the arrest of Taylor Jones, was made out of his presence and hearing, and would have been incompetent against Taylor Jones, had Watkins been willing to testify that he made such offer or such statement to Chap Duncan. The rule has been well settled in this state for a long time that a witness cannot be impeached about an immaterial or collateral matter, or statements out of court contrary to his evidence in court about an immaterial or collateral matter. In Williams v. State, 73 Miss. 820, 19 So. 826, it was held that it is error to admit testimony to contradict that of a witness for the opposite party, drawn out on cross-examination, unless the testimony sought to be contradicted is of a substantive

nature and relative to the issue, and not merely collateral thereto; that the testimony of a witness on cross-examination, in respect to matter not brought out on direct examination, is such that it would not be competent if offered by the cross-examiner, the same is collateral, and cannot be contradicted. "When a witness for the defendant in a murder trial has denied, on cross-examination, that she said to the wife of the deceased, beside his dead body, on the day of the homicide, in the presence of certain persons named, 'I sent you word not to let your husband come down here. They made up a plot to kill him three weeks ago,' such testimony being wholly incompetent, it was error to allow the state to introduce the contradictory testimony of one of the persons named as present at the time." This decision went into a considerable review of the authorities, and cited among others, Madden v. State, 65 Miss. 176, 3 So. 328; Jones v. State, 67 Miss. 111, 7 So. 220, and Jamison v. Illinois C. R. Co., 63 Miss. 33.

In Kolb v. State, 129 Miss. 834, at page 851, 93 So. 358, 361, the rule was discussed, and it was said: "If a witness testifies to a thing on the witness stand, being a material issue, the credibility of such witness may always be impeached by showing that such witness made contrary statements in reference to such fact at other times and places. The testimony for the state with reference to the actual act depended wholly upon the testimony of the prosecutrix. It is true she was corroborated as to such evidence, but without the aid of her testimony it is difficult to see how the case could be maintained." In that case the statement which would have sought to be proved by the witness on cross-examination, and about which she was sought to be contradicted, would have been material to the issue there involved, and therefore incompetent.

In Witt v. State, 159 Miss. 478, 132 So. 338, 339, it was held that it is competent to contradict a witness as to statements made out of court inconsistent with state-

ments made on the witness stand, if the statements made out of court would be competent evidence on the issues if the witness was a willing witness and would swear such facts. In the course of the opinion we said: "The rule is that a witness may be impeached by showing statements outside the court inconsistent with statements made on the witness stand, if the statements, made outside the court would be material and could be proven as part of the cause on the trial of the issue involved, if the witnesses were willing to testify on the witness stand to the statements made out of court as facts." The authorities on the subject, in addition to these, may be found in 14 Mississippi Digest, Witnesses Key No. 379.

In addition to the objections here discussed, in contradicting the witness Watkins by proving that he did make the alleged statement, it seems clear to us that the statements alleged to have been made to Chap Duncan were statements made in seeking and discussing a compromise, and the statements and negotiations of the parties seeking a compromise or adjustment are not admissible in evidence. It is often the case that an innocent party interested in or affected by a prosecution of this kind, or a lawsuit, would prefer a private satisfactory adjustment, to having the matter go to trial. It is in this case not an admission by Watkins even that they had stolen the hog, for he did not make that statement so far as the record shows, but sought to have the matter adjusted out of court. It appears from the witness's testimony that while he did approach Jones about an adjustment, it was declined by Jones. This was a case where the efforts of Watkins to settle, he being jointly indicted, but not on trial, was prejudicial to Jones, and this incident had no place in the evidence in this case.

For the errors indicated the judgment must be reversed, and the case remanded for a new trial.

Reversed and remanded.