MURPHY *v.* STATE

No. 40667          January 6, 1958          99 So. 2d 595

O. L. *McLeod,* Pascagoula; *Bidwell Adam,* Gulfport; *Jackson & Ross,* Jackson, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

HOLMES, J.

The appellant was indicted in the Circuit Court of Jackson County for the murder of his wife. His trial resulted in a jury verdict finding him guilty as charged but disagreeing as to his punishment, and he was accordingly sentenced to life imprisonment in the State penitentiary.

The homicide occurred at the home of the appellant and the deceased on Saturday night at about eleven o'clock on March 2, 1957. There was no one present in the home at the time other than the appellant and his wife. The appellant and the deceased lived in one side of a duplex apartment in the City of Pascagoula, Mississippi. Their apartment was of the shotgun type construction, that is to say, that the rooms from front to rear extended back one behind the other. One entering the apartment through the back door entered a small hallway about six feet in length and then passed into an empty or unfurnished room, and from there into the kitchen, and from there into a bedroom, and from there into another bedroom, and from there out on the front porch. On the trial, the appellant admitted killing the deceased, but sought to establish by his proof that he shot her in self defense.

The State's proof showed substantially the following: The deceased spent the early afternoon of the

day of the killing visiting on the porch of a neighbor. The appellant returned to his home about four o'clock P.M. and entered his apartment. He was shortly joined by his wife who remained for a short time and then left to go to town. Later in the evening, the appellant joined his wife and they went together to the Red Rooster Cafe which was located about two blocks from their home. While there the appellant was drinking and engaged in an argument with a man called Booker T. The appellant had a knife in his hand which was similar to a knife later found in the little hallway of the apartment near the body of the deceased. The deceased was not drinking and remonstrated with the appellant about arguing with Booker T., and told him that if the police were called and arrested him and put him in jail she was not going to get him out. The appellant, with the knife in his hand, told the deceased to stay out of his "G--D--- business" and threatened to kill her. The appellant and Booker T. then went out of the Cafe and later the deceased left the Cafe. The incident in the Cafe occurred about 10:30 o'clock P.M. At about 11 o'clock P.M., neighbors heard the deceased outside of her apartment calling to the appellant to let her in the apartment. She called several times, and finally the appellant unlatched the back screen door and let her in, and in a second or a second and a half after she entered through the back door of the apartment, neighbors heard a shot in the apartment. Before the shot, the lights were on in the apartment but were turned out immediately after the shot. The neighbors heard no argument, disturbance or struggle immediately before or after the shot. None of the neighbors saw the appellant after the shot. One of the neighbors went to the window and called the deceased, and when there was no response she called the police. The police arrived in about ten minutes. When the police arrived, the apartment was dark. They entered the apartment and found the body of the deceased lying face down in the empty room. Her feet were just inside the doorway between

the empty room and the hallway. There was a puddle of blood in the hallway just beyond her feet. Her shoes were nearby in the hallway, as was the knife which was similar in appearance to that which the appellant was seen to exhibit in the Red Rooster Cafe about thirty minutes or so earlier. The police examined the body and found that the deceased was dead and was killed by a shotgun blast fired into her chest and at such close range as to cause powder burns. A dish rag was stuck in her dress near the wound apparently for the purpose of staying the flow of blood. Blood smears found on the floor indicated that the body had been dragged about two feet inside the empty room. The shotgun was found standing in the corner of the second bedroom by the side of the door leading into the kitchen. An examination of the gun showed that it had been recently fired and that the empty shell was still in the gun.

No one entered the apartment between the time the shot was heard and the arrival of the police. The police made a search for the appellant but were unable to find him. The next morning, the appellant called the police from the home of his uncle, about six blocks from the appellant's apartment, and told them that he wanted to give himself up. The police came out and got him and took him to the police station. One of the officers asked him how the thing happened and he said that he only got the gun for the purpose of scaring her and he did not intend to kill her. He later gave a statement to the officers in which he said that he was in the kitchen when his wife entered the apartment, and that she began to advance on him with a knife and threatened to kill him, and he went into the bedroom and got the gun and fired to stop her. He said in his statement that his wife was in the empty room and he was in the kitchen when he shot.

The appellant was the only witness in his own behalf. He testified that when he and his wife returned to the

apartment after leaving the Red Rooster Cafe, he asked her to fix something to eat for him and she refused, and that one word brought on another and an argument between them ensued; that later she left the apartment and he latched the back screen door; that she returned shortly and called to him to let her in and that he did not let her in; that she then asked him to hand her her pocket book, and he told her to come around to the window and he would give it to her out the window; that he did not hand her the pocket book, and that she continued to call to him to let her in, and that finally when she told him she would not argue any more he unlatched the back screen door and let her in; that when his wife first entered she had a long paring knife in her hand and she began to advance on him telling him she had tried to kill him before and now she was going to kill him, and that he backed into the empty room and seized the shotgun which was standing in the corner of the empty room and told her not to come on him, and when she continued to advance he shot her to protect his life; that she had stabbed him on two prior occasions, and had scalded him by pouring hot water on him while he was asleep, and that he was afraid of her. He denied that he told the witness Ruby Coleman, as testified to by her, that he was drunk one night and started to the bathroom with a pot of scalding water and spilled it on himself. He denied that he had threatened his wife's life in the Red Rooster Cafe, and denied that he had there exhibited a knife similar to the knife found near the body of the deceased, and denied that he had dragged the body as indicated by the blood smears on the floor. He testified that he shot the deceased to protect his life. At another time he said that he shot because he was scared and that he did not intend to kill her. At another time he said that he did not aim his gun at her, and this notwithstanding the physical facts showing she was shot in the chest. At another time he said that when he got his gun, he tried to push her back and the gun went off. From the ap-

pellant's testimony, it appears that some little time elapsed between the time that his wife entered the apartment and the time of the shooting. According to the State's proof, she was immediately shot on entering the apartment. The appellant further testified that after the shooting, he turned out the lights and fled the scene because he was excited.

The appellant contends that he was entitled to a peremptory instruction under the rule announced in the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, to the effect that where the defendant or his witnesses are the only eye witnesses to the homicide, their version must be accepted unless substantially contradicted in material particulars by credible witnesses, physical facts, or facts of common knowledge. He says, therefore, that the trial court erred in refusing his request for a peremptory instruction. We do not think so. The Weathersby case has been almost worn threadbare by the efforts of defendants to come within its rule. It is a rare case that meets all of the requirements of the rule. This, in our opinion, is not one of the rare cases. The many contradictions in the appellant's own testimony as to material matters, the physical facts and the contradiction of the appellant by other credible witnesses in material particulars clearly establish the fact that the rule announced in the Weathersby case is not applicable. Harrelson v. State, 217 Miss. 887, 65 So. 2d 237; Spivey v. State, 212 Miss. 648, 55 So. 2d 404. We accordingly find no difficulty in reaching the conclusion that the trial court was correct in refusing the appellant's request for a peremptory instruction. The conflicting state of the evidence clearly created a question of fact for the determination of the jury on the issue of the appellant's guilt or innocence.

The appellant further complains that the trial court erred in his rulings with respect to the admissibility of evidence bearing upon the occurrence in the

Red Rooster Cafe. The court, over the objection of the appellant, permitted the State to show that the appellant and Booker T. engaged in an argument on that occasion, but omitting the details thereof, and to show that the appellant exhibited a knife on that occasion similar in appearance to the knife found near the body of the deceased, and to show the exchange of remarks between the appellant and his wife wherein the appellant told the deceased to stay out of his business and threatened her. The court was careful to exclude all other testimony with reference to the occurrence in the cafe at the time and to instruct the jury to disregard all such testimony. The incident in the cafe occurred only about thirty or forty minutes prior to the homicide. Proof of the exchange of remarks between the appellant and the deceased and the appellant's threat to kill her was competent as tending to show the state of mind of the appellant and the deceased and as bearing upon the question as to who was the aggressor in the fatal encounter. Clark v. State, 123 Miss. 147, 85 So. 188; Butler v. State, 179 Miss. 865, 176 So. 589. ▆▆ Proof that the appellant on the occasion in the cafe exhibited a knife similar in appearance to that found near the body of the deceased was competent as bearing upon the question as to who had the knife at the time of the fatal difficulty. We are accordingly of the opinion that the court's ruling with reference to the admissibility of the evidence complained of was correct and affords no ground for the reversal of the judgment of conviction.

It follows from what has been said that the judgment of the court below should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.