313 So.2d 388 (1975)
James A. SIMS
v.
STATE of Mississippi.
No. 48484.
Supreme Court of Mississippi.
May 26, 1975.
*389 Jacobs, Griffith & McIntosh, Cleveland, for appellant.
A.F. Summer, Atty. Gen. by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, INZER and WALKER, JJ.
WALKER, Justice, for the Court:
The appellant, James A. Sims, was indicted, tried and convicted in the Circuit Court of the First Judicial District of Bolivar County, Mississippi, for the crime commonly referred to as "receiving stolen property," and sentenced to three years in the state penitentiary with eighteen months suspended. We reverse and remand for a new trial.
The gist of the offense of "receiving stolen property" is guilty knowledge that the accused came into possession of the property knowing that it had been stolen. Johnson v. State, 247 So.2d 697 (Miss. 1971). This Court has said many times, however, that it is not necessary that the defendant actually know that the property has been stolen, but that "... if a person has information from facts and circumstances which should convince him that property has been stolen, or which should lead a reasonable man to believe that property had been stolen, then in a legal sense he knew it." Pettus v. State, 200 Miss. 397, 410, 27 So.2d 536, 540 (1946).
In the case now before us, the appellant was charged with unlawfully receiving a 1972 Ford Bronco vehicle that he knew had been stolen. His defense was that he had been in the market for a Bronco vehicle and had negotiated with a salesman whom he thought worked for Bob Morrow Ford in West Memphis, Arkansas; that he first gave the man a draft for $3,000 upon the condition that it could not be cashed except with a "title certificate attached"; that he took possession of the Bronco vehicle; and that four months later, during which time the draft was not cashed, the "salesman" came to his home, presented him with what he considered at the time to be a title certificate which later turned out to be no *390 more than an Alabama tag receipt, but which accurately described the Bronco vehicle in his possession including the correct serial numbers. (A certified copy, under Act of Congress, of the tag receipt was admitted into evidence). The Bronco had been in possession of the appellant for approximately fourteen months when he was arrested and charged.
It is not necessary to detail all of the facts developed during the trial, but suffice it to say the state's case was extremely close on the question of guilt beyond a reasonable doubt.
Appellant's primary contention on appeal is that during the course of the trial, while the defendant was on the stand identifying the Alabama tag receipt that he received from the "salesman" and which he contends he accepted as a certificate of title, the trial judge committed reversible error by commenting on the weight of such evidence. In that regard, the following colloquy took place:
Q. [By appellant's attorney] What proof [of title] did you get?
A. The document you hold in your hand.
Thereafter, the court made the following comment regarding the instrument:
COURT:  Ladies and gentlemen of the jury, the document you are reading now merely states that this registration number appeared in Alabama, the car registration as far as the tag is concerned; it is not evidence of title whatsoever; it is not evidence that it is a bill of sale whatsoever at all; it is just whatever it says that it is and nothing more, and it means, of course, that the clerk's signature has been verified by the judge of that court. (Emphasis added).
Appellant contends that the trial judge's remarks amounted to a comment on the weight of the evidence and in effect virtually cut his defense out from under him.
We recognize that it is proper in many instances for a trial judge to instruct the jury that a particular instrument is admitted into evidence for a limited purpose. However, in this case, the defendant was not attempting to prove that the instrument offered into evidence was a certificate of title but was offering it for the purpose of showing that he received an instrument which he thought was a title certificate from the "salesman" at the time he paid him $3,000 and that under the circumstances he had no reason to suspect that the vehicle had been stolen at the time he received the Bronco or anytime thereafter.
The appellant's position is well taken. The effect of the judge's remarks with respect to the tag receipt was that the appellant had no right to believe nor did the jury have any right to consider that the tag receipt was related in any manner to title and ownership of the vehicle and that appellant should have known when he received it that it was not a title. The appellant contends that he was dealing in good faith with a man whom he knew as Bobbie Gene Broglen, and that the tag receipt from Alabama was in the name of Bobbie Gene Broglen and described the Ford Bronco that he had purchased including the motor serial numbers. Under these circumstances, the jury had the right to consider the tag receipt, free of the court's comments, along with all the other relevant evidence, in determining whether or not the appellant received the Bronco knowing that it had been stolen.
We are of the opinion that when the trial judge told the jury that they could not consider the tag receipt at all as evidence of title this amounted to a comment on the weight of the evidence and was so prejudicial as to be reversible error.
The appellant next complains that the court erred in allowing the state to impeach the testimony of the witness Aderholt because the impeachment of the witness allowed incompetent evidence to come before the jury. This assignment of error is without merit. The record discloses that the district *391 attorney asked Mr. Aderholt the following question:
Q. And, on one occasion, didn't you tell Mr. Coleman, after he had been talking to you, that the man [Sims] told you he didn't have any bill of sale or any title to it, didn't you tell Mr. Coleman that?
And Mr. Aderholt answered as follows:
A. No, sir, I did not.
This is the statement which was used as a basis for the impeachment of the witness Aderholt.
Thereafter, Mr. Johnny Coleman, the constable at Gunnison, was called as a rebuttal witness by the state for the purpose of impeaching Mr. Aderholt as a witness. The district attorney asked Mr. Coleman the following questions:
Q. Did he [referring to defense witness Aderholt] on any occasion indicate to you that Mr. Sims had told him he did not have a bill of sale or any title paper on the car?
A. He did... .
(Here there was an objection and discussion, then the district attorney continued).
Q. Did he [Aderholt] make any statement to you, Mr. Coleman?
......
A... he [Aderholt] said, "The man don't have a title to it", he says, "As soon as he gets a title, he's going to put a tag on it."
MR. GRAVES: That's all we have.
The appellant contends that any statement made by the witness Aderholt tending to incriminate the appellant Sims, not made in the presence of Sims, would be inadmissible hearsay. We agree with this contention to the extent that it would not be admissible on the question of guilt. What Mr. Aderholt told Coleman would not be relevant on the question of appellant's guilt unless it was shown that such statement was made in the presence and hearing of Sims and that he did not contradict or otherwise take exception to the statement. In such an instance, this would amount to an admission by silence and would be substantive evidence of appellant's guilt. However, once Aderholt denied that Sims had made such a statement to him, he could be impeached by showing that he had told another witness (Coleman) that Sims had told him that he did not have a title to the vehicle. In that event, the statement attributed to appellant Sims would not be admissible as substantive evidence of the guilt of Sims but would only be admissible for the purpose of impeaching the witness Aderholt.
The rule[1] is that a witness may be impeached by showing statements made outside the court inconsistent with statements made on the witness stand, if the statements made outside the court would be material and could be proven as part of the cause on the trial of the issue involved, if the witness was willing to testify on the witness stand to the statements made out of court as facts.[2] We continue to adhere to this rule.[3]
The statement of Aderholt meets the above test. Aderholt would, without question, have been permitted to testify that Sims had told him that he did not have a title to the Bronco, if Aderholt had been willing to testify that Sims had in fact made such statements to him.
This case is distinguished from Williams v. State, 73 Miss. 820, 19 So. 826 (1896) because, in that case, the contradictory *392 statements about which the witness was cross-examined could not have been proven had the witness been a willing one for the adverse party, the state.
We have considered the remaining assignments of error and find them to be without merit.
For the reasons stated above, this case is reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
NOTES
[1] See Williams v. State, 73 Miss. 820, 19 So. 826 (1896), which traced the history of the rule and clarified the position of this Court in the adoption of the rule.
[2] Witt v. State, 159 Miss. 478, 132 So. 338 (1931).
[3] See Jones v. State, 180 Miss. 210, 177 So. 35 (1937), for a discussion of the application of this rule in the case law of this State.